537 So.2d 366 (1988)
Albert K. LUPER
v.
SEA CREW SERVICE CORPORATION, Fidelity and Casualty Company of New York and Norman Offshore Pipeline Contractors, Inc.
No. 88-CA 0808.
Court of Appeal of Louisiana, Fourth Circuit.
December 29, 1988.
Robert C. Evans, New Orleans, for Norman Offshore Pipeline Contractors, Inc.
Sacks & Eason, Alan R. Sacks, New Orleans, for Sea Crew Service Corp.
Hailey, McNamara, Hall, Larmann & Papale, Kevin L. Cole, New Orleans, for Sea Crew Service Corp. and Fidelity and Cas. Co. of New York.
Before BYRNES, CIACCIO and WARD, JJ.
CIACCIO, Judge.
While working as a galleyhand aboard the lay barge Delta I, plaintiff tripped on a welding ground lead, suffering personal injuries requiring back surgery. Plaintiff was employed by Sea Crew Services, Inc., the catering contractor employed by the vessel owner, Norman Offshore Pipeline Contractors, Inc. Plaintiff sued the vessel owner Norman and his employer, the catering contractor Sea Crew. Norman filed a cross-claim against Sea Crew for contractual indemnity and filed a third-party claim against Sea Crew's insurer, Fidelity & Casualty *367 Company of New York, claiming coverage and a defense. Fidelity & Casualty denied Norman both coverage and a defense.
The parties stipulated to the amount of plaintiff's damages, leaving for trial the apportionment of fault and the contract and insurance issues raised by Norman's cross-claim and third-party demand. The district court found all legal fault for plaintiff's injuries attributable solely to Norman. The court also ruled against Norman on its cross-claim and third-party demand. Norman appeals. We affirm.[1]
Norman argues that plaintiff should have been found contributorily negligent, pointing out correctly that in his reasons for judgment the trial judge makes no mention of considering plaintiff's negligence. By finding that Norman's negligence constituted the entirety of fault for plaintiff's injuries, the trial judge impliedly found plaintiff free from fault. We are not persuaded by Norman's argument that plaintiff's familiarity with his situation, relative control over and ability to avoid the danger, including choosing alternative action to avoid obvious danger, renders plaintiff negligent for having fallen. See Martinez v. U.S.F. & G., 412 So.2d 109 (La.App. 4th Cir.1982). Plaintiff was performing required duties. There is no evidence that his performance, generally, was in any way unsafe or unreasonable. Between two choices, he chose the most obvious and direct route. There is no evidence indicating that plaintiff acted unreasonably in not choosing the longer alternative route and no evidence that he was aware of any danger along the route he chose. The welding ground lead over which plaintiff tripped was dark in color, blending in with the dark-colored deck upon which plaintiff walked. The evidence does not establish that plaintiff failed to avoid an obvious danger (by, for example, failing to see what he should have seen). In short, the evidence does not support a finding that plaintiff was in any way negligent.
Norman argues that Sea Crew, through plaintiff's co-employees, was contributorily negligent, mistakenly arguing that a finding of negligence should arise from concluding that actions of the co-employees were a cause-in-fact of the accident. The evidence supports the conclusion that if plaintiff's co-employees had done their jobs differently, he might not have been doing what he was doing at the time of his accident. Arguably, the actions of the co-employees are, therefore, logically antecedent in the chain of causation of plaintiff's injuries. A finding that certain conduct was a cause-in-fact of plaintiff's injuries, however, does not establish liability, there must also be a breach of a legal duty imposed to protect against the particular risk involved. Shelton v. Aetna Casualty & Surety Company, 334 So.2d 406 (La.1976). The actions of plaintiff's co-employees had nothing to do with creating the danger caused by the welding ground lead lying across the deck where plaintiff walked, and any duty owed to plaintiff by his co-employees did not encompass protection from the particular risk which in this case caused his harm. The record does not support a conclusion that plaintiff's co-employees were negligent; the district court correctly concluded that Sea Crew was not negligent.
The remaining issues involve interpretation and application of the contractual arrangement between Norman and Sea Crew, and the provisions of the insurance policies issued by Fidelity & Casualty to Sea Crew. On these issues, the trial judge gave the following reasons for judgment.
While the legal fault falls only to Norman, the legal responsibility for payment must be still ascertained in light of Norman's claims for coverage under the policy of insurance issued by Fidelity & Casualty Company of New York and under *368 contractual indemnification. Sea Crew, as the Jones Act employer of plaintiff, is without fault and thus neither it nor its employers liability insurer (Fidelity & Casualty Company of New York) must respond to the damages incurred. The Court also rejects the argument that the alternate employer endorsement of this policy is applicable in this instance. For that provision to apply, there must exist some form of employment relationship as between Norman and plaintiff. There is no evidence in the record to support this conclusion under any of the suggested theories. The court further finds no support for the third party claim by Norman for attorneys fees or penalties. Finally, no defense was owed Norman by Fidelity & Casualty Company of New York since the inapplicability of the alternate employer was apparent from the first of discovery.
The court must next decide whether Sea Crew, pursuant to its contractual agreement with Norman, is legally responsible to pay a judgment occasioned solely by Norman's fault. This claim by Norman involves entirely separate considerations than those above.
Sea Crew and Norman signed contracts on June 11, 1984 and March 22, 1985; the latter being designated a "Master Liability Agreement". Sea Crew contends that Norman procedurally dismissed its cross claim when it invoked the June 11, 1984 contract in place of the March 22, 1985 contract. The court will pretermit this procedural question and look instead to the merits to decide.
The Master Liability Agreementthat is, the March 22, 1985 agreementis controlling. It was signed at a later date and it contains the following language:
"Any conflict between this agreement and any other agreement ... shall be resolved in favor of the provisions of this agreement."
The pertinent part of this contract is as follows:
"Contractor will hold harmless ... Norman ... arising out of or in connection with the negligence of Contractor... or in connection with any theory of strict liability arising from the placement, use, defect or other default of any equipment owned, operated or in any way placed aboard the vessel by Contractor ..."
The contract is silent as to indemnity obligations for injuries caused or brought about solely by Norman's fault or negligence. Federal Maritime Law ordinarily controls construction of any indemnity clause in a contract for catering services aboard a vessel. Transcontinental Gas Pipeline Corp. v. [Mobile] Mobil Drilling Barge, 424 F.2d 684, 691 (5th Cir.1970). Under Federal Law a contract to indemnify another for his own negligence imposes an extraordinary obligation entitling an indemnitor to express notice for such a potential obligation. Corbitt v. Diamond M. Drilling Company, 654 F.2d 329, 333 (5th Cir. 1981). The Norman Master Liability Agreement fails to contain such express notice within the four corners of the document.
The court, finally, concludes that the Master Liability Agreement is not ambiguous and, as such, it is bound not to consider parol evidence to determine the intent of the parties. Instead the court is bound to decide the indemnity question issue based on the four corners of the document.
We find no error.
Plaintiff was not an employee of Norman; he was an employee of Sea Crew. Plaintiff's status as a member of the crew of a vessel owned and operated by Norman did not make him an employee of Norman; he remained an employee of Sea Crew. Norman's reliance for insurance coverage and a defense is misplaced on the Maritime Liabilities and Alternate Employer endorsements to Sea Crew's insurance policy with Fidelity & Casualty. The Maritime Liabilities endorsement provides coverage for Sea Crew for its own maritime liabilities as employer; coverage does not extend to Norman. The Alternate Employer endorsement extends coverage for injuries to Sea Crew employees "while in the course of special or temporary employment by the *369 alternate employer." At the time of his injury plaintiff was not in the course of special or temporary employment by Norman; he was an employee of Sea Crew, performing his duties as assigned aboard a vessel owned and operated by Norman; he was not an employee, "special", "temporary" or otherwise, of Norman. The trial judge reasoned correctly that under the insurance policies Fidelity & Casualty did not owe coverage or a defense to Norman. He correctly denied Norman's third-party claim against Fidelity & Casualty.
The contractual arrangement between Norman and Sea Crew concerning catering services to be supplied by Sea Crew aboard a vessel owned and operated by Norman is a maritime contract governed by maritime law. Cason v. Diamond M. Drilling Co., 436 So.2d 1245, 1253 (La.App. 1st Cir.1983), writ denied 441 So.2d 1221 (La.1983), cert. denied 466 U.S. 938, 104 S.Ct. 1911, 80 L.Ed.2d 460 (1984), and cases cited therein. Cf. Fontenot v. Mesa Petroleum Co., 791 F.2d 1207 (5th Cir.1986); Lefler v. ARCO, 785 F.2d 1341 (5th Cir.1986); Corbitt v. Diamond M. Drilling Co., 654 F.2d 329 (5th Cir.1981). See also, Note, Contractual Indemnity Under Maritime and Louisiana Law, 43 La.L.Rev. 189 (1982). Under federal maritime law a contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage. The contract should be read as a whole, and a court should not look beyond the written language of the contract to determine the intent of the parties unless the disputed language is ambiguous. Fontenot, 791 F.2d at 1214, citing Corbitt, 654 F.2d at 332-333, and other cases.
Norman's insurers prepared the Master Liability Agreement, dated March 22, 1985. It is the most recent written agreement between Norman and Sea Crew which applies to this litigation, and its terms pertinent to this dispute are clear and unambiguous. By its terms the agreement supersedes any earlier, conflicting agreements. The indemnity provision calls for Sea Crew to hold Norman harmless for any liability arising from Sea Crew's negligence or founded upon a strict liability claim arising from equipment for which Sea Crew is responsible. The indemnity provision does not provide expressly for Sea Crew to indemnify Norman for Norman's negligence, and any earlier agreement so providing would be conflicting and, therefore, superseded by this agreement. Because this provision is not ambiguous there was no need for the court to consider extrinsic evidence to determine the intent of the parties or to reform their agreement. The trial judge reasoned correctly that the indemnity provision, valid under federal maritime law, did not provide for Sea Crew to indemnify Norman for Norman's negligence. He, therefore, correctly denied Norman's cross-claim against Sea Crew.
For the reasons assigned, we affirm the judgment of the district court.
AFFIRMED.
NOTES
[1] Sea Crew also filed an appeal, from a post-judgment ruling permitting Norman to amend its cross-claim. We question whether Sea Crew may invoke our appellate jurisdiction to review that ruling, but pretermit discussion of that jurisdictional issue and those issues raised by Sea Crew concerning the permitted amendment, considering these issues moot in light of our decision to affirm the judgment on the merits.