KLEES, Judge.
Fidelity & Casualty Company of New York [hereinafter “Fidelity”] appeals the trial court’s judgment in favor of plaintiff, Gerald A. Spitzfaden.
On July 20, 1987, plaintiff filed suit against Daigle Welding Service, Inc. [hereinafter “Daigle”] and Chevron, U.S.A., Inc. [hereinafter “Chevron”] seeking damages for injuries caused by his slip and fall on a vessel. In his initial petition, plaintiff asserted that on January 11, 1987, he was employed by Daigle and was injured while working on board a barge owned and operated by Daigle and/or Chevron. Plaintiff alleged both a Jones Act claim and the general maritime law claim of unseaworthiness of the vessel, and he sought maintenance and cure. On January 8, 1988, he filed an amended petition adding as defendants Fidelity and Lloyds of London, both alleged to be insurers of Daigle. Chevron then asserted a cross claim for indemnity against Daigle, Fidelity and Lloyds, and also filed a third-party demand against the Institute of London Underwriters, alleged to be an additional insurer of Daigle.
in December of 1988, prior to trial, plaintiff settled with Fidelity, dismissing with prejudice all claims covered by the primary employers liability clause of Fidelity’s policy issued to Daigle. Fidelity paid its policy limits of $25,000 under this clause. Plaintiff reserved his rights against all other parties, their insurers, and specifically against insurers of Daigle providing maritime employers liability coverage in excess of $25,000. In July of 1989, plaintiff settled his Jones Act claim with Chevron, Dai-gle and their respective insurers in the amount of $150,000, specifically reserving any claim plaintiff might have against Chevron under section 905(b) of the Longshoremen and Harbor Workers’ Compensation Act [hereinafter “LHWCA”], but only insofar as such claim may be insured under the policy issued to Daigle by Fidelity. Shortly thereafter, on August 3, 1989, plaintiff filed a second amended petition asserting a LHWCA claim against Chevron and Fidelity, alleging that Chevron qualified as plaintiff’s alternate employer under a special endorsement of the maritime employers liability section of Fidelity’s policy issued to Daigle. Fidelity filed an exception of res judicata to this claim.
The liability and damages portions of plaintiff’s claim were bifurcated. The liability issues were tried before the district judge on November 2,1991. At the conclusion of the trial, the district court rendered judgment: (1) overruling Fidelity’s exception of res judicata; (2) holding that plaintiff was not a Jones Act seaman, but was covered by the LHWCA; (3) holding that Chevron was the alternate employer of plaintiff; (4) finding that Fidelity had policy limits of $500,000 on plaintiff’s claim and was entitled to a credit of $25,000 *953 representing the amount already paid to plaintiff; (5) finding that Chevron was not entitled to a credit of the amount it paid in settlement of plaintiff’s Jones Act claim; and finally, (6) holding that Fidelity had a duty to defend Chevron from the date of filing of plaintiffs original suit.
Fidelity has appealed the trial court’s judgment. On appeal, Fidelity argues that the trial judge erred in seven respects: (1) in finding that Chevron was the alternate employer of plaintiff; (2) in finding that plaintiff was not a seaman, and that therefore Fidelity’s policy limits were $500,000 rather than $25,000; (3) in finding that plaintiff's earlier settlement with Fidelity does not preclude this claim on the basis of res judicata; (4) in placing upon Fidelity the duty to defend Chevron from the date of the original petition, rather than from the date of the second amended petition which alleged the LHWCA claim; (5) in finding that Chevron was negligent in creating the hazard which caused plaintiff’s fall; (6) in holding Fidelity and Chevron solidarily liable; and (7) in failing to hold that plaintiff’s claim was precluded by the Louisiana Oilfield Indemnity Act.
After reviewing the record, we conclude that the trial court erred by finding Chevron to be the alternate employer of plaintiff and by requiring Fidelity to defend Chevron from the date of plaintiff’s original petition.
The alternate employer endorsement, which the trial court interpreted states that Fidelity’s coverage applies to bodily injury to Daigle employees “while in the course of special or temporary employment by the alternate employer.” These terms are not defined in the policy, however. Two insurance experts testified as to the meaning of the terms. Robert Breeden, Chevron’s expert, stated that the endorsement is generally interpreted broadly because the intent is to provide protection to the named party (in this case, Chevron) with respect to any liability it may have for injury to an employee of its contractor. Mr. Breeden also stated that a “borrowed servant” would clearly be covered by the alternate employer endorsement. Mr. Breeden had not formed an opinion as to whether Chevron was the alternate employer of the plaintiff in this case, however. Mr. J. William She-rar, Fidelity’s expert witness, stated that the phrase “special or temporary employment” refers to a special assignment. He gave the example of a small oil company that might need for a special project an engineer who knew something about ports. The small oil company might then arrange to borrow such an engineer from Texaco for six weeks. During this time, the small oil company would specifically pay Texaco for the man’s package, but the man would report to the small oil company and work under the direction of its staff. In Mr. Sherar’s opinion, Chevron did not qualify as the plaintiff’s alternate employer in the instant case because Daigle paid the plaintiff, directed him in his work, filed his W-2 forms, and paid his worker’s compensation.
The facts concerning plaintiff’s employment are not in dispute. Plaintiff was a roustabout who worked in a Daigle crew with two other roustabouts and a tool pusher or foreman. At the time of the accident, plaintiff’s crew had been doing general maintenance work for Chevron exclusively for about nine months. The contract between Chevron and Daigle stated that Dai-gle agreed to perform the work as an independent contractor and not as an employee of Chevron. The testimony established that plaintiff got all of his orders directly from the Daigle tool pusher, who was the crew foreman. The foreman would attend a meeting each week day to get general orders from Chevron personnel, with the Friday morning instructions sufficing for the entire weekend. The work barge that was used to transport the Daigle crew from job to job was operated by the crew itself. The barge was owned by Chevron and outfitted with Chevron tools, although Daigle provided some smaller tools. A Chevron supervisor would go on board the barge only if there was a problem, or occasionally to check the work. No Chevron supervisor could recall ever having had any personal contact with the plaintiff. If the Chevron supervisor was dissatisfied with the work of a roustabout, he would contact Daigle, and the roustabout was usually re *954 placed. Chevron paid Daigle for the exact man hours worked, and Daigle paid in turn the plaintiff.
One of the jobs of the Daigle crew was to replace Gulf signs on the platforms with new Chevron signs. Because the new signs would not attach easily, the Daigle foreman had a pile of signs stacked on the work barge. The roustabouts had to step on these signs to get on or off the barge. Plaintiff slipped and fell when he stepped on the signs. The accident report on plaintiff’s injury was completed by Bobby Foret, the Daigle foreman.
Based on the foregoing evidence, we find that plaintiff was not a special or temporary employee of Chevron, but that he remained an employee of Daigle. Our conclusion is based primarily on the fact that plaintiff was under the direction and control of the Daigle foreman. In Luper v. Sea Crew Service Corporation, 537 So.2d 366 (La.App. 4th Cir.1988), this court interpreted the exact same Fidelity alternate employer endorsement with reference to a galley hand working for Sea Crew who was injured aboard a barge owned and operated by Norman Offshore Pipeline Contractors, Inc. In that case, we found that there was no “employment relationship” between Norman and the plaintiff to trigger the application of the alternate employer endorsement. 537 So.2d at 368. We stated:
Plaintiff was not an employee of Norman; he was an employee of Sea Crew. Plaintiffs status as a member of the crew of a vessel owned and operated by Norman did not make him an employee of Norman; he remained an employee of Sea Crew....
The Alternate Employer endorsement extends coverage for injuries to Sea Crew employees “while in the course of special or temporary employment by the alternate employer.” At the time of his injury plaintiff was not in the course of special or temporary employment by Norman; he was an employee of Sea Crew, performing his duties as assigned aboard a vessel owned and operated by Norman; he was not an employee, “special”, “temporary” or otherwise, of Norman.
Id. at 368-69.
Two cases upon which the trial judge relied in determining that Chevron met the test for being plaintiffs alternate employer are factually inapposite to the instant case. In Hardin v. Conoco, Inc., 712 F.Supp. 1240 (W.D.La.1989), aff’d. 901 F.2d 1112 (5th Cir.1990), the plaintiff was a roustabout employed for twelve years by T.J.O., which was in the business of supplying laborers to various oil companies. For the entire twelve years he worked for T.J.O., plaintiff had been assigned to Conoco. He always took his orders directly from the Conoco rig boss, not from anyone at T.J.O. Id. at 1241-42. Therefore, the court found him to be a borrowed servant of Conoco for purposes of the LHWCA. Id. AT 1245.
In Hebron v. Union Oil Company of California, 634 F.2d 245 (5th Cir.1981), the plaintiff was employed by Hutco, which had contracted with Union Oil to supply cleaning and painting services on its platforms. In holding that plaintiff was a borrowed servant of Union Oil, the court found it significant that plaintiff, at the time of his injury, was taking orders directly from a Union Oil employee, although he normally took orders from his Hutco supervisor, who was absent for a week. Id. at 247.
We find the element of direct control by the alternate employer to be the distinguishing factor in these two cases. In view of the evidence, the trial judge erred in the instant case when he found Chevron o be the alternate employer of plaintiff, because there was no direct control or supervision of plaintiff by Chevron. We therefore find the trial court’s conclusion in this respect to be manifestly erroneous. We hold that the alternate employer endorsement in Fidelity’s policy issued to Dai-gle does not apply in the instant case.
We also find that the trial judge erred in holding that Fidelity owed Chevron a defense from the time of filing of plaintiff’s original petition. Louisiana is a fact pleading jurisdiction. Kizer v. Lilly, 471 So.2d 716 (La.1985). Plaintiff’s original petition contains a general allegation of liabil *955 ity under the Jones Act and the general maritime law, but has no allegation of an employer/employee relationship between plaintiff and Chevron. Rather, the petition states in Paragraph IX that plaintiff “was employed by Daigle Welding Service, Inc.” Chevron is mentioned only as having “owned or operated or controlled” work barge 3210, aboard which plaintiff was injured. From the face of the petition, the only potential liability of Chevron would be as owner of the vessel for unseaworthiness, a general maritime law claim that would be covered by Chevron’s general liability insurance policy, not the employer’s liability policy issued by Fidelity to Daigle. The first time plaintiff alleged that Chevron was liable as his employer was in his second amended petition filed on August 3, 1989, in response to which Fidelity took over Chevron’s defense. Therefore, we hold that the trial court was wrong in imposing upon Fidelity the duty to defend from the time the original petition was filed.
Because plaintiff in his settlement specifically reserved only his potential LHWCA claim against Chevron to the extent that such was insured by this particular Fidelity policy, our holding that the policy does not apply and that Fidelity did not breach its duty to defend Chevron obviates the necessity of discussing any of the other issues urged by appellant. Accordingly the judgment of the trial court is reversed, with each party to bear its own costs.
REVERSED.