750 So.2d 291 (1999)
Rayford J. COMEAUX and Brenda Fremin Comeaux
v.
C.F. BEAN CORPORATION and Bean-Weeks Company.
No. 99-CA-0924.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1999.
Writ Denied March 17, 2000.
*293 Timothy F. Burr, Jason P. Waguespack, Galloway, Johnson, Tompkins & Burr, New Orleans, La, Attorneys for Defendants/Appellants, C.F. Bean, Corporation and Bean-Weeks Company.
Paul H. Due', Donald W. Price, Due', Caballero, Price & Guidry, Baton Rouge, La, and Joseph E. Windmeyer, Metairie, La, and Philip F. Cossich, Jr., Cossich & Associates, Belle Chasse, La, and Maury Herman Herman, Herman, Katz & Cotlar, New Orleans, La, Attorneys for Plaintiffs/ *294 Appellees/Rayford Comeaux and Brenda Fremin Comeaux.
T. Patrick Baynham, Anthony Reginelli, Jr., Baynham, Best & Reginelli, L.L.C., Metairie, La, Attorneys for Third-Party Defendant/Appellee.
Court composed of Judge WILLIAM H. BYRNES, III, Judge MIRIAM G. WALTZER, Judge JAMES F. McKAY, III.
WALTZER, Judge.
Defendants, C.F. Bean Corp. and Bean-Weeks Co., appeal a judgment against them for $1,006,466.79, in favor of plaintiff, Rayford Comeaux[1], a seaman employed by Doerele's Quarterdecks, Inc. and injured in an accident on a boat owned by his employer, leased by Bean-Weeks and operated by an employee of Bean-Weeks. Bean appeals and argues that the trial court erred in awarding damages against C.F. Bean Corp. and awarding excessive damages to Comeaux.

STATEMENT OF THE CASE
Comeaux filed suit against C.F. Bean and Bean-Weeks on 14 September 1995 under general maritime law. Comeaux alleged that his injuries were caused by the negligence of Bean's employees. Bean answered the petition and filed a third party demand seeking indemnification or contribution from Doerle, Comeaux' employer. Doerle answered Bean's demand and reconvened seeking contribution or indemnification. Bean answered the reconventional demand.
After a judge trial on 26 June 1997, the trial court rendered judgment against Bean and in favor of Comeaux in the amount of $1,006,466.79 on 16 January 1998.[2] Moreover, the trial court found in favor of third party defendant, Doerle, and against Bean on the third party demand.
Bean appeals the judgment of the trial court dated 16 January 1998. Bean argues that the trial court erred by not finding fault on the part of Comeaux, by not finding fault on the part of his employer, Doerle, by attributing fault to Bean, by admitting certain opinion testimony, by awarding certain damages, and by denying Bean's third party demand against Doerle.

STATEMENT OF FACTS
Ray Comeaux began working for Doerle in 1991 as a maintenance man. His duties included general maintenance of the quarterboat, including monitoring fuel, oil, and water, and dropping the spud and raising it upon command. Comeaux followed instructions from Doerle. A quarterboat is a vessel with no means of propelling itself. On 10 September 1993, Comeaux was injured in an accident aboard the quarterboat BARBARA. Doerle owned the quarterboat, but on the day of Comeaux' accident, under a Charter Agreement dated 15 July 1993, Doerle had leased it to Bean. At the time of the accident, the quarterboat was being maneuvered by a second vessel, the JENNIFER BEAN. This tug was owned by Bean and operated by employees of Bean.
The accident happened when the tow line between the two vessels became taut, bending the BARBARA's handrail, striking Comeaux, and pinning him to the derrick. On the day of the accident, Comeaux had not helped rig the tow lines. He was on the deck of the quarterboat waiting for the command to drop the spud.
Scott Baron, an employee of Bean, operated the JENNIFER BEAN on 10 September 1993. The testimony of H.J. Romero, II, a representative of Bean, revealed *295 that Baron did not have a captain's license at the time of the accident but subsequently obtained a master's license. David E. Cole, an expert in the areas of marine safety, regulatory analysis, and accident reconstruction, testified that Beans' tug, the JENNIFER BEAN, was not operated by a person properly licensed for such a vessel, as required by Section 8904 of the United States Code Annotated (1994 Edition). Cole explained that he believed the accident occurred because the tug was improperly maneuvered by the Bean employee.
Comeaux suffered severe and disabling injuries from the accident. The accident caused a compound fracture to the left femur. Immediately after the accident, Comeaux waited several hours before he was transported, due to weather, to the hospital to receive medical treatment for the injuries from the accident. He underwent many surgeries to his left leg attempting to repair the injury. On the day of the accident he was admitted to West Jefferson Medical Center and remained hospitalized there until 20 September 1993. On 14 September 1993, Dr. Thomas Cashio, an orthopedic surgeon, operated to place a rod in the shaft of the femur to align the fracture fragments.
Upon his discharge from the hospital, he sought treatment from a second orthopedic surgeon near his home. Dr. Harold Hebert became his treating physician. Dr. Hebert has treated Comeaux continuously from 22 September 1993 until trial. On 30 November 1993, Dr. Hebert performed a surgical procedure, a diagnostic arthroscopy, on Comeaux' left knee. Dr. Hebert believed that this procedure and the problems associated with the left knee were caused by the accident of 10 September 1993. Dr. Hebert discovered that Comeaux' left knee had severe erosion of the cartilage on the underside of the kneecap. In January 1994, Dr. Hebert suspected that the fracture to the femur was not healing appropriately. On 20 April 1994, Dr. Hebert operated on Comeaux' left femur. With this procedure, Dr. Hebert grafted synthetic bone at the site of the fracture and inserted locking screws, both proximally and distally. Dr. Hebert removed these screws in July 1994. On 22 August 1994, Dr. Hebert performed a fourth operation to correct the femur fracture. He did a bone graft to the fracture site and inserted screws.
Comeaux fell in November 1994 after his left knee collapsed. He suffered a tibial plateau fracture to his left knee after this fall. Dr. Hebert treated him for this injury and believed that it resulted from the injury to the left leg from the September 1993 accident.
On 6 February 1996, Dr. Hebert performed a second arthroscopy to Comeaux' left knee. At this time, Dr. Hebert found significant degeneration in the condition of the knee since the November 1993 surgery.
On 7 January 1997, Dr. Hebert removed the metal pin and screws at the site of the femur fracture. Dr. Hebert testified that he believes Comeaux will need surgery in the future, both arthroscopy to the left knee and total knee replacement. He foresees the need for multiple procedures in such a young patient.
Comeaux remained disabled, from the pain of the injury and from weakness caused by the injury, at the time of trial. He testified that he has been unable to return to work. Comeaux also described the extreme and recurring pain associated with the injury, the scarring from the surgeries, and the difference in his right and left leg lengths, causing a limp, after the accident and injury. Dr. Hebert testified that Comeaux had not reached maximum medical improvement and could only work with certain restriction. Moreover, he opined that Comeaux would need future surgery, including replacement of the left knee, to correct the injury. Dr. Hebert prescribed physical therapy for Comeaux, and Comeaux sought and received therapy *296 for his injuries, when he was physically able, for several years after the accident.
ASSIGNMENTS OF ERROR NUMBERS ONE, TWO, THREE, AND FOUR: Whether the trial court erred by finding that Bean was responsible for the accident and resulting injuries and refusing to assess fault to Comeaux or his employer.
Essentially, Bean complains that the trial court erred in finding that Bean is solely responsible for Comeaux' damages. Bean urges this court to reverse the trial court's findings that Comeaux was not at fault, that Doerle was not at fault and that Bean was responsible for the negligence causing the accident.

COMEAUX' NEGLIGENCE
Bean alleges that Comeaux was negligent and this negligence contributed to the accident. Bean argues that Comeaux was negligent when he approached the tow line draped across the bow of the BARBARA. Comeaux admitted he knew the position of the tow line created an unsafe condition. However, he testified that he approached the tow line to remedy the problem at a time when the tug was not moving and he had no knowledge that the tug would suddenly and without warning fire its engines and cause the line to become taut and break the handrail. After reviewing the entire record, we found no evidence that Comeaux' position, inside the handrail but away from the derrick, presented an unreasonably dangerous condition until the operator of the tug fired the vessel's engines and caused the line to become taut.
We find no error in the trial court's conclusion that Comeaux was not negligent in approaching the tow line.

DOERLE'S NEGLIGENCE
Bean alleges that Comeaux' employer, Doerle, failed to adequately instruct its employee to avoid the tow line and the adjacent handrail. Bean argues that such inaction constituted negligence and that this negligence caused the accident. The trial court did not attribute any negligence to Doerle, and we find no evidence in the record to prove that Doerle's alleged negligence contributed to the accident.
Doerle employed Comeaux as a maintenance man in 1991. He served aboard various vessels from this time until the date of the accident. On the day of the accident, 10 September 1993, he was working aboard a quarterboat. Throughout his employment with Doerle, Comeaux' duties included maintaining the vessel, monitoring fuel and water, repairing generators and engines, and lowering the spud upon command once the vessel was in position. He did not assist in the towing process. He did not help rig the tow lines or monitor the progress of the vessel while it was under tow. Although his supervisor at the time of the accident, Gerald Guidroz, testified that Doerle did not generally instruct its maintenance employees on matters of marine safety at the time Comeaux started his employment, Guidroz stated that he had told Comeaux about the general dangers of tow lines. Moreover, he testified that he did not realize the danger in standing behind the handrails until after Comeaux' accident. David Cole[3] testified as an expert in the areas of marine safety, regulations and accident reconstruction. Bean objected to his qualification in these areas. The trial court overruled this objection and accepted him as an expert in the tendered areas.
*297 Determinations of whether to qualify a witness as an expert after evaluating his "knowledge, skill, experience, training, or education" [See. LSA-C.E. art. 702.] is within the sound discretion of the trial judge. Clement v. Griffin, 91-1664 (La.App. 4 Cir. 3/3/94); 634 So.2d 412, 424. Trial judges are afforded great latitude in deciding whether the witness has qualifications to testify as an expert on a particular subject. Although such discretion is not absolute, the decision to accept a witness as an expert as qualified to render an opinion on a particular matter may not be reversed in the absence of manifest error. Id. Cole testified about his qualifications, including his educational background, his numerous years working for the Coast Guard, and his years of employment as a consultant in the areas of marine safety and regulations and accident reconstruction for various entities. From the record, we find no error in the trial court's decision to qualify this witness as an expert in the areas of marine safety and regulations and accident reconstruction.
Cole testified that he did not believe that Comeaux' position behind the handrails presented a dangerous situation generally. He believed that the tug operator's negligence in failing to observe the location of the tow lines before he fired the engines caused the unsafe condition. Moreover, he testified that he did not believe the employer of a maintenance man, whose job duties did not concern maritime matters (specifically, an employee whose duties did not include participation in the towing process of a vessel without power to propel itself), was under any obligation to instruct such an employee on marine safety. He concluded that Doerle was not negligent in its instruction of Comeaux regarding marine safety.
For these reasons, we affirm the decision of the trial court and conclude that the record does not prove that Doerle was negligent in its instruction of its maintenance man, Comeaux.

BEAN'S LIABILITY
Bean argues that the trial court erred by concluding that C.F. Bean was liable to Comeaux. Bean argues because C.F. Bean merely owned the vessel, the JENNIFER BEAN, the tug moving the quarterboat upon which Comeaux served and was injured, C.F. Bean is not responsible for Comeaux' damages. Bean explains that the operator of the JENNIFER BEAN was employed by Bean-Weeks Company. Although Bean stipulated to the fact that C.F. Bean was a member of the Bean-Weeks Joint Venture, defendants now argue that C.F. Bean bears no responsibility for the debts/liabilities of the joint venture. We are not persuaded.
Bean's arguments conflict with the evidence in the record and with its position in the trial court and on appeal. Bean stipulated to that fact that C.F. Bean was party to the joint venture, Bean-Weeks. Moreover, in the trial court and on appeal Bean argued that although C.F. Bean is not a party to the charter containing the indemnification provision C.F. Bean is entitled to indemnification, since it's a partner in the joint venture, Bean-Weeks. Furthermore, throughout the record with the Answer, the Pre-trial Order, the Trial Memorandum, and the Post Trial Brief on Behalf of C.F. Bean Corp. and Bean-Weeks Joint Venture, Bean repeatedly represented that these entities formed a joint venture and were entitled to the same defense. It was not until the Motion for New Trial that Bean argued that C.F. Bean was not responsible for Bean-Weeks' liabilities. Bean's arguments are both counter intuitive and wrong.
H.J. Romero, II, the only representative of either C.F. Bean or Bean-Weeks Company to testify, stated that C.F. Bean was a member of Bean-Weeks. He also indicated that although he was an employee of C.F. Bean, he supervised all services concerning human resources for all of the Bean entities, including C.F. Bean and Bean-Weeks. Furthermore, he indicated *298 that this practice extended to all other areas of management of operation, including operational management. Clearly, C.F. Bean participated in the joint venture, Bean-Weeks.
Moreover, the parties stipulated that C.F. Bean was a member of the joint venture. This factual conclusion that a joint venture existed and that C.F. Bean participated as a member is conclusive and we will not consider Bean's arguments. Joint ventures are governed by the law of partnerships. American Fidelity Fire Insurance Company v. Atkison, 420 So.2d 691, 694 (La.App. 2 Cir.1982); citing Marine Services, Inc. v. A-1 Industries, Inc., 355 So.2d 625 (La.App. 4 Cir.1978). We find no reason to reverse the decision that C.F. Bean, as a member of the joint venture, is responsible for the debts of Bean-Weeks.
ASSIGNMENTS OF ERROR NUMBERS FIVE, SIX, SEVEN, EIGHT, AND NINE: Whether the trial court erred in awarding excessive damages for past and future mental pain and suffering, awarding excessive damages for past and future physical pain and suffering, awarding damages for future medical expenses, and awarding damages for lost wages and loss of earning capacity.
Bean argues that the trial court erred in its award of damages. Bean argues that the trial court erred by awarding excessive amounts for Comeaux' damages for past and future mental pain and suffering, for past and future physical pain and suffering and for future medical expenses. Bean also complains about the amounts awarded in damages for Comeaux' lost wages and loss of earning capacity.

EXCESSIVE GENERAL DAMAGES
The standard of review for damage awards requires a showing that the trier of fact abused the great discretion accorded in awarding damages. In effect, the award must be so high or so low in proportion to the injury that it "shocks the conscience." Moore v. Healthcare Elmwood Inc., 582 So.2d 871 (La.App. 5 Cir.1991).
Comeaux suffered severe injuries after this accident. The force of the blow injuring Comeaux broke both the metal handrail on the barge and the bone in his left leg. After the accident, Comeaux waited several hours before medical treatment, including pain medication, could be administered. He suffered numerous invasive surgeries over a period of several years and faces multiple surgeries in the future. Moreover, Comeaux experienced various complications associated with his injuries. He required medication to manage the pain associated with the injuries for years after the accident. At trial he suffered frequent pain, walked with a limp and at time a cane, and endured permanent scarring from the injury. Comeaux remained unable to return to work and to do other tasks which he enjoyed before the accident. Although he could still pursue certain hobbies, hunting and fishing, he testified, and other witnesses corroborated this testimony, that he could not enjoy them to the extent that he had before the accident.
His treating physician testified that Comeaux would require future surgeries to treat his injuries. Dr. Hebert believed that Comeaux would need at least one and possibly two knee replacements which the doctor associated with the accident. He opined that Comeaux had not reached maximum medical improvement at the time of trial and would need future physical therapy. Moreover, Dr. Hebert testified that Comeaux' abilities were restricted by his injuries.
The trial court awarded Comeaux $250,000 for past physical and mental pain and suffering and $300,000 for future physical and mental pain and suffering. Bean complains that these awards are excessive.
The awards are not obviously the result of passion or prejudice and they bear a reasonable relationship to the elements of *299 the proved damages. Many rational triers of fact could have decided that a lower award is more appropriate, but we cannot conclude from the entirety of the evidence viewed in the light most favorable to the prevailing party, Comeaux, in the trial court, that a rational trier of fact could not have fixed the awards of general damages at the level set by the trial judge or that this is one of those "exceptional cases where such awards are so gross as to be contrary to right reason." Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993).

FUTURE MEDICAL EXPENSES
Bean argues that the trial court awarded an excessive amount for future medical expenses. The trial court awarded Comeaux $120,000 for future medical expenses. Dr. Hebert, Comeaux' treating physician, testified that Comeaux would require further medical treatment. Dr. Hebert opined that Comeaux needed more surgery on his left knee, including arthroscopy and knee replacement. Dr. Hebert believed that Comeaux could require more than one knee replacement to his left knee. Furthermore, Dr. Comeaux testified that Comeaux needed additional physical therapy. After reviewing the record, we are not convinced that the trial court's award of future medical expenses constituted manifest error.

LOST WAGES AND LOSS OF EARNING CAPACITY
Bean argues that the trial court erred in awarding damages for lost wages and loss of earning capacity. The trial court awarded Comeaux $69,669 for past lost wages and $173,065 for loss of earning capacity. Assignment of Error Number 5 concerns the introduction of opinion evidence by a lay witness. We find no abuse of discretion in the trial court's decision to admit this witness' testimony about Comeaux' inability to perform work as a mechanic pursuant to LSA-C.E. art. 701.
After the accident in 1993, Comeaux was unable to return to work with Bean as a maintenance man. At trial, according to the treating physician's opinion, Comeaux had not achieved maximum medical improvement and had not been advised that he could resume working. Moreover, Dr. G. Randolph Rice, an expert in the area of economics, testified that he calculated Comeaux lost wages and future loss of earning capacity to total $242,734. We find, after reviewing the entire record, that the trial court's awards for lost wages and loss of earning capacity were not clearly wrong.
ASSIGNMENTS OF ERROR NUMBERS TEN AND ELEVEN: Whether the trial court erred in finding for third party defendant, Doerle, and dismissing Bean's demand for contractual indemnity.
Bean demanded indemnification, under the charter agreement, from Doerle for any liability for Comeaux' accident. The trial court denied Bean's demand and dismissed the claim for indemnity under the terms of the contract. We affirm.

PAROL EVIDENCE
Interpretation of a contract is the interpretation of the common intent of the parties. LSA-C.C. art.2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. art.2046. The words of a contract must be given their generally prevailing meaning. LSA-C.C. art.2047.
Bean argues that the trial court erred by refusing to admit parol evidence of Doerle and Bean's intent regarding the indemnification provisions of the charter agreement. Generally, parol evidence is inadmissible to vary the terms of a written contract. LSA-C.C. art. 1848. When the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language of the contract, parol evidence is admissible to clarify *300 the intent of the parties. Diefenthal v. Longue Vue Management Corp., 561 So.2d 44, 51 (La.1990).
Bean argues that because the charter agreement is ambiguous, parol evidence is admissible to clarify the intent of the parties. However, Bean relies on parol evidence to argue that the terms of the contract are ambiguous. The agreement did not present an ambiguity to the trial court, and we find no error in this finding.
On 15 July 1993, Doerle, the owner of the quarterboat, leased the vessel to Bean, the charterer of the vessel by written agreement. This contract had two separate provision concerning indemnification.
Paragraph 12 provides:
CHARTERER shall defend, indemnify and hold owner, its officers, directors, stockholders, agents, employees, insurers and vessels harmless from all claims, suits, actions, losses and damages for all personal injury, including death and property damage, for any actions of CHARTERER, excluding negligence of the OWNER, the unseaworthiness of its vessel or strict liability, arising out of or in any way connected with the execution of this Charter Agreement and the charter, hire or use of vessels thereunder by the CHARTERER.
Paragraph 15 provides:
OWNER shall defend, indemnify, and hold CHARTERER harmless from all claims of every nature or kind resulting from the injury to or death of the maintenance man employed by OWNER on the vessel herein chartered.
Paragraph 12 provides for indemnification by Bean in favor of Doerle, and Paragraph 15 requires indemnification by Doerle in favor of Bean. We do not find these paragraphs either ambiguous or incongruous. Bean seeks to admit parol evidence to do exactly what it is inadmissible to do: vary the terms of the written contract. We are not persuaded by Bean's arguments that the trial court erred in refusing to admit parol evidence to further explore or explain the parties' intent.

INDEMNIFICATION
Bean sought indemnification from Doerle for Bean's liability for Comeaux' injuries. Paragraph 15 of the charter agreement controls this demand for indemnification.
Under federal law, a contract to indemnify another for his own negligence imposes an extraordinary obligation entitling an indemnitor to express notice for such a potential obligation. Luper v. Sea Crew Service Corp., 537 So.2d 366, 368 (La.App. 4 Cir.1988), citing Corbitt v. Diamond M Drilling Co. 654 F.2d 329, 333 (5th Cir.1981). A contract of indemnity is construed to cover all losses, damages, or liabilities which reasonably appear to have been contemplated by the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage. Luper, supra at 369. Paragraph 15 of the contract provides "OWNER shall defend, indemnify, and hold CHARTERER harmless from all claims of every nature or kind resulting from the injury to or death of the maintenance man." [Emphasis added.] An indemnification of "any and all claims" will not include the negligence of the indemnitee. Seal Offshore, Inc. v. American Standard, Inc., 736 F.2d 1078, 1081 (5th Cir.1984). Paragraph 15 is silent regarding indemnity obligations arising from the indemnitee's own negligence. Under the terms of the written contract, we affirm the trial court's denial of Bean's demand for indemnification from Doerle for Bean's own negligence.

CONCLUSION
For the above reasons, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] Although Comeaux' wife was a plaintiff in the action, the judgment dismissed her claim for loss of consortium. Neither party appealed this ruling.
[2] On appeal, Bean complains that the trial court did not issue reasons for its judgment. However, from our review of the record, we find no evidence that Bean or any other party requested that the trial court render reasons for judgment in compliance with LSA-C.C.P. art.1917.
[3] Although Bean opposed this expert's testimony by Motion In Limine pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), this motion was referred to the merits in this judge trial. Although Bean objected to the expert's qualification on the record, we find no evidence that they objected to the expert's testimony after his acceptance by the trial court in the areas tendered. We find that Bean waived its Daubert objection. Daubert concerns admissibility of the expert's opinion and not his qualification as an expert in the area tendered.