ROLAND L. BELSOME, Judge.
hThe City of New Orleans; Norman Foster, Director of the Department of Finance; and Anthony Riley, Collector in the Department of Finance, appeal a judgment of the Louisiana Board of Tax Appeals, Local Tax Division (the “Board”) granting summary judgment in favor of Jazz Casino Company, LLC. The Board held that the sales and use tax (“Sales Tax”) sought to be collected by the Collectors was prescribed as a matter 'of law and undisputed fact. The City appeals from this judgment.

FACTS AND PROCEDURAL HISTORY

Beginning in 2008, the City of New Orleans (the “City” or the “Collector”), in its capacity as the single collector of sales and use taxes levied by local taxing authorities within Orleans Parish,[1] conducted a sales and use tax audit of Jazz Casino Company, LLC (“Harrah’s”) for the period of January 1, 2004 through June 30, 2007 (the *1254 “Tax Period”).[2] The audit continued for a period of five years, |aand each year, pursuant to La. R.S. 47:337.67(0(1), Harrah’s signed waivers of prescription to allow the Collector more time to complete the audit.[3]
On December 17, 2012, as she had done for the last several years, Mary L. Williams, auditor for the Collector, sent Kathleen “Kit” Floyd, Harrah’s Director of Sales and Property Tax, their standard one-page waiver form to suspend prescription for one year. In the four years preceding, the form was signed and returned without question or amendment. However, on December 21, 2012, upon receipt of the standard waiver form, Ms. Floyd talked by phone with Anthony Riley, Deputy Collector for the City, and proposed that the waiver be reduced from one year to ninety days. Mr. Riley agreed, and on that same afternoon, Mr. Riley and Ms. Floyd exchanged a series of emails culminating in Mr. Riley sending Ms. Floyd an updated ninety-day waiver form via email. This waiver form, if signed, would have waived Harrah’s right to claim prescription for a period of ninety- days from and after December 31, 2012.[4]
During their exchange, Ms. Floyd indicated to Mr. Riley that she would have to send the form to an officer of the company for a signature. At' this point, Ms. Floyd contacted' Nathaniel Tannehill who, at the time, was the Director of Finance for Har-rah’s in New Orleans, and the two made a “joint decision” to change the time period on the waiver from “ninety days” to “sixty days.” Accordingly, Mr. Tannehill drew a line through the word “ninety” and printed “sixty” above it. Mr. 1,-¡Tannehill then presented the form to Daniel Real, Harrah’s Regional President, who signed the altered form on behalf of Harrah’s.[5]
On December 26, 2012, now having the amended, signed, witnessed, and notarized waiver form, Ms. Floyd sent a scanned copy by email to Mr. Riley and had the original sent to him via overnight delivery. At no time prior to December 26, 2012 did anyone from Harrah’s contact the City and discuss the amendment made to the form. Likewise, at no point following December 26, 2012, did anyone from the Collector’s office contact Ms. Floyd or anyone else at Harrah’s with any concerns concerning the waiver as signed by Mr. Real.'
On March 4, 2Ó13, apparently unaware of the alteration made to the waiver form, the Collector issued to Harrah’s the Notice of Assessment at issue.[6] Pursuant to the sixty-day waiver executed by Mr. Real, the Assessment was issued three days after the sixty-day waiver terminated on March 1, 2013.. Nonetheless, both parties continued to work together as if the assessment was timely. Namely, on March 25, 2013, Ms. Floyd sent a letter to the City protest *1255 ing the assessment and -requesting arbitration. On April 1, 2013, Ms.- Floyd re-urged her request for arbitration, expressing interest in working toward an amicable solution. On May 31, 2013, Jenny Phillips, who was working as Harrah’s Louisiana sales and use tax counsel, mailed the City a check for a portion of the assessment, and requested a waiver of penalties associated with that portion of the assessment. | ¿On July 29, 2013, Mr. Riley sent Ms. Phillips a letter informing her that her request for the waiver of penalties had been, granted.
On July 10, 2014, Harrah’s filed its Petition for Redetermination of Local Assessment with the Board of Tax Appeals (“the Board”) and, since then, both sides have propounded and responded to discovery, taken depositions, and filed motions and exceptions. It was not until Harrah’s filed the Supplemental Motion for Summary Judgment which'is at the heart of this appeal in May of 2015, that it took the position that the assessment, issued on March 4, 2013, was untimely. The Board heard that motion and, on August 7, 2015, issued a Judgment in Harrah’s favor, vacating the assessment and dismissing the case in total. The Collector appeals from this Judgment.

ASSIGNMENTS OF ERROR

1. Appellant contends that the Board erred in not recognizing a valid written agreement to suspend the prescriptive period for ninety days.
2. Appellant contends that the Board erred in finding that the December 21, 2012 waiver, which was amended by Harrah’s to suspend prescription for sixty days, constituted the parties agreement to suspend the prescriptive period.

STANDARD OF REVIEW

This Court reviews the granting of a summary judgment do novo, using the same standard applied by the trial court in deciding the motion for summary judgment. Sanchez v. Harbor Const. Co., Inc., 2008-0316, pp. 3-4 (La.App. 4 Cir. 10/1/08), 996 So.2d 584, 587. Under this standard, summary judgment is properly granted when the pleadings, depositions, answers to interrogators, and admissions on file, together with the affidavits, if any, show that there' is no genuine issue as to 1 ¡¡material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).

DISCUSSION

The underlying issue for our review is whether the Notice of Assessment issued to Harrah’s on March 4, 2013 was timely. All taxes, except real property taxes, prescribe three-years after the thirty-first day of December in the year in which they are due. La, Const, art. VII, § 16. As such, a collector has three years to assert a demand for taxes. Sales and use taxes levied by political subdivisions follow this general rule. See La. R.S. 47:337.67(A). However, the prescriptive period for sales and use taxes may be suspended or interrupted as provided by law. La. R.S. 47:337.67 provides the exclusive list of actions and events that suspend or interrupt prescription, and reads, in pertinent part, as follows: >
A. Sales and use -taxes levied by any political subdivision shall prescribe as of three years from the thirty-first day of December of the year in which such taxes became due.
B. The prescriptive period running ■against any such sales and. use tax shall be interrupted by any of the following:
*1256 1. The action of the collector in assessing the amounts of such taxes in the manner provided by law.
2. The filing of a summary proceeding in court.
3. The filing of any pleading, either by the collector or the taxpayer, with the Board of Tax Appeals or with any state or federal court.
4. The filing of a false or fraudulent return
5. The failure to file a return, with the intent to defraud.
C. The running of such prescriptive period may also be suspended as follows:
1. By means of written agreement between the taxpayer and the collector made prior to the lapse of such period.
[[Image here]]
ULa. R.S. 47:337.67 (emphasis added).
In this case, the prescriptive period had been suspended annually, beginning in 2008, through a series of written agreements that effectively extended the prescriptive period for one year periods. Each waiver of prescription was memorialized in a document provided by the Collector. However, in December 2012, Harrah’s amended the agreement to waive prescription for only sixty days from December 31, 2012. Accordingly, Harrah’s contends that the Assessment issued on March 4, 2018 was issued after the sixty-day prescription waiver had expired on March 1, 2013, making the Assessment untimely.
When a party raises the defense of prescription, the mover typically bears the burden, however, if on the face of the pleadings it appears that prescription has run, the burden shifts to the plaintiff to prove an interruption or suspension of the prescriptive period. SS v. State, Dept. of Social Services, 2002-0831, pp. 6-7 (La.12/4/02), 831 So.2d 926, 931. Additionally, the burden of proof on a motion for summary judgment is provided in Louisiana Code of Civil Procedure article 966(C)(2), which states:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
Here, the constitutional three year prescriptive period expired on December 31, 2010, more than two years prior to the issuance of the Assessment at issue. See |7La. Const, art. VII, § 16; La. R.S. 47:337.67(A). Thus, it is clear from the face of the pleadings that prescription has run, and the burden, consequently, shifted to the Collector to prove that prescription has been interrupted or suspended. Whether any genuine issues of material fact exist as to the running of this prescriptive period is addressed below.

Assignment of Error 1

First, the Collector argues that, pursuant to La. R.S. 47:337.67(C)(1), there was a written agreement in effect between Harrah’s and the City that the prescriptive period would be suspended for a period of ninety days from and after December 31, 2012, making the Notice of Assessment issued on March 4, 2013 timely. The Col *1257 lector points to a phone conversation, together with a seiies of emails between the parties as evidence of such written agreement. Specifically, on December 21, 2012, after Mr. Riley agreed in a phone conversation with Ms. Floyd to reduce the waiver to ninety days, the following emails were exchanged: . •
1. Mr. Riley emails Ms. Floyd telling her that “I "will update the waiver or you can strike through the one year period and make it 90 days as I am sure we can resolve the audit in that time frame.”
2. Ms. Floyd replied, “Please update the waivers, I will have to send to an officer of the company to sign.”
3. After updating the waiver as requested, Mr. Riley emails Ms. Floyd the updated form as an attachment.
It is these emails that the Collector holds out to be a satisfactory written agreement to suspend prescription, pursuant to La. R.S. 47:337.67(0(1).
The Collector cites numerous cases to support the proposition that written agreements may be made via email. However, this argument fails to recognize that both the standard waiver form originally sent to Ms. Floyd on December 17, 2012, and the updatéd form sent by Mr. Riley via email, contemplate numerous [ 8“mandatory” and unambiguous requirements to make the waiver valid. Namely, the form and its cover letter expressly require the form to be signed by someone with authority, the signature to be witnessed, and the form notarized with the notary seal affixed thereto. The cover letter goes as far as to note that the notarization requirement is a “MANDATORY REQUIREMENT.”
Notwithstanding the jurisprudence addressing the validity of written agreements made via email,[7] the email exchange clearly lacks the witnesses and notarization required by the Collector’s form and cover letter. Additionally, Ms. Floyd never signed any “agreement,” electronic or otherwise, purporting to suspend prescription for ninety days.[8] The Collector argues that “clicking send” on an email is equivalent to signing a paper document, however, Louisiana jurisprudence on the issue suggests otherwise. An electronic signature “means an electronic sound, symbol, or process attached to or logically associated with a record and .executed or adopted by a person with, the intent to sign the record. La. R.S. 9:2602(8) (emphasis added). The party seeking to enforce an email “agreement” has the burden to prove that there was intent to sign. Regions Bank v. Cabinet Works, L.L.C., 2011-0748, p. 16 (La.App. 5 Cir. 4/10/12); 92 So.3d 945, 956. Here, the record is void of any evidence that Ms. Floyd intended to sign the alleged email “agreement,” Instead, the clear language.of the. emails indicated that a final form agreement would be sent by Mr. Riley and signed by an officer of 1 aHarrah’s. See id. (Finding that an email was not an enforceable agreement where email messages clearly contemplated a later, final form, and there *1258 was no intent to sign an agreement electronically).
Moreovér, Louisiana Civil Code article 1947 provides that when “the parties have contemplated a certain form, it is presumed that they do not intend to be bound unless the Contract is executed in that form.” The evidence in the record clearly demonstrates that the parties intended the Collector’s standard waiver form to be the final written contract. The email correspondence upon which the Collector so heavily relies clearly shows that upon' Ms. Floyd’s request, • Mr. Riley updated the waiver form in anticipation of a signature from 'an officer of Harrah’s. Similarly, the Collector instructed that the signed form be returned by December 27, 2012. There would have been no need to have the signed form returned so expeditiously if the parties intended the émail to constitute a binding written agreement. Considering these facts in conjunction with the requirements made explicit on the face of the Collector’s standard waiver form and the cover letter sent tb Harrah’s, it is clear that the parties intended the signed, witnessed, and notarized waiver form to be the only binding agreement to waive prescription. Mr, Riley’s own affidavit lacks any assertion that his email exchange with Ms. Floyd constituted a written agreement to effectuate a waiver of prescription. Instead, Mr.’ Riley testified that he “fully expected that the Waiver and Extension of Prescriptive Period form, with the change to ‘ninety days,’ would be signed by the appropriate person representing Harrah’s and would be returned to the City not later than December 27, 2012, as required in Ms. Williams’ letter of December 17, 2012 to Ms. Floyd.”
ImFinally, the past business practices of Harrah’s and the Collector are also indicative of the parties intent that only a validly executed waiver form would effectively, extend the prescriptive period. See Northside Furniture of Ruston, Inc. v. First Tower Loan, Inc., 43, 736, p. 4 (La.App. 2 Cir. 12/3/08); 999 So.2d 151, 153. In fact, the parties executed waivers of prescription five times, prior to the execution of the waiver at issue in this litigation, . Each of the five previous waivers was executed by an office of. Harrah’s, witnessed, and notarized as required by the collector. The Collector has not offered any evidence that indicates intent to deviate from this regular and established practice.

Assignment of Error 2

Given our finding on the previous assignment of error, the only potentially applicable written agreement is the waiver form executed by Mr. Real on December 21, 2012, waiving prescription for sixty days from December 31, 2012, On one hand, the Collector argues that the sixty-day waiver is a unilateral act that does not rise to the level of a “written agreement between the taxpayer and the collector” contemplated by La. R.S.- 47:337.67. Not surprisingly, Harrah’s asserts that the amended form reflecting a sixty-day waiver of prescription is an authentic act that cannot be contradicted or modified by par-ol evidence.
Many theories permeate the party's arguments on- this issue and much is made of the consideration of parol evidence in interpreting the signed, notarized, and witnessed sixty-day waiver form. See La. C.C. art. 1833 (outlining the requirements of an authentic act). In an attempt to demonstrate that no meeting of the minds’ ever occurred, the Collector relies on parol-evidence to demonstrate that it never intended to agree to waive prescription for the sixty days contemplated on the amended’ waiver form. However, the meaning and intent of a written ] ¶ T contract must be sought within the four comers of the instrument and cannot be contradicted *1259 by parol evidence. La. C.C. art. 1848. The use of extrinsic evidence is proper only where a contract is found to be ambiguous after an examination of the four corners of the agreement. See Comeaux v. C.F. Bean Corp., 1999-0924 (La.App. 4 Cir. 12/15/1999), 750 So.2d 291, 299-300, writ denied 2000-0127 (La.3/17/00), 756 So.2d 1145. Here, even though the word “ninety” is scratched out, and replaced with a handwritten “sixty,” the ambiguoüsness of the contract is doubtful. Courts are cautioned not to find ambiguity when none exists. Freeport-McMoran Energy, LLC v. Cedyco Corp., 2010-0637, p. 20 (La.App. 4 Cir. 1/15/11), 54 So.3d 813, 824.
On the other hand, it is well settled that a contract is formed by the consent of the parties established through offer and acceptance. La. C.C. art. 1927. Louisiana law on obligations provides that when an acceptance is not in accordance with the terms of the offer, it is deemed to be a counter offer. La. C.C. art. 1943. Accordingly, Harrah’s unilateral amendment of the waiver period should be deemed as a counter offer, of which consent is conditioned on the Collector’s ultimate acceptance of that change. The only manner in which the Collector arguably accepted this “counter offer” was if their silence could have been deemed an acceptance pursuant to La. C.C. art. 1942.
Ultimately, a determination as to whether the sixty-day waiver is a valid written agreement satisfactory' to suspend prescription pursuant to La. R.S. 47:337.67 is of no moment. If we were view the waiver as a valid -“written agreement,” prescription was waived for sixty days, until March 1, 2013, and the Collector’s Notice .of Assessment issued on March 4, 2013 would have been untimely. Contrarily, viewing the amendment to the waiver as a unilateral act or | ^“counter offer” that was never “accepted” by the Collector would mean that no waiver was ever executed to' waive prescription passed December 31, 2012, making the Collectors Notice of Assessment, again, untimely.
In sum, the Collector has not overcome its burden in demonstrating that prescription was interrupted or suspended as to make the Sales Tax sought to be collected •against Harrah’s timely! While we decline to 'determine whether or not the sixty-day waiver form was a satisfactory written agreement to suspend prescription until March 1, 2013, :the record clearly demonstrates that any prior oral or email correspondence between the parties did not constitute a valid “written agreement” to suspend prescription for any length of time. Accordingly, we find no genuine issues of material fact as to'the running of prescriptive period on the Sales Tax at issue. Therefore, the Board’s granting of summary judgment in favor’of Harrah’s is affirmed.
AFFIRMED.

. See La. Const, art. VII, § 3(B).

. The audit was a joint audit with the Louisiana Department of Revenue.

. The annual signing of one-year “prescription waivers”- is common in the sales and use tax audit practice. Most taxing authorities like the Collector have pre-printed forms to be used for these purposes.

. The waiver, in pertinent part, provided:
"NOW THEREFORE, the undersigned taxpayer does by these -present waive and abandon his right to claim prescription in the matter of the above described tax claim of the City of New Orleans for a period of ninety days from and after- December -31, 2012."

. The signing of the waiver was properly witnessed by both Mr. Tannehill and Brandon Wills and thereafter notarized by Harrah’s in-house counsel.

. Allegedly it was not until Harrah’s filing of its Supplemental Motion for Summary Judgment in May of 2015 that anyone with the City was aware that the waiver form had been altered to reflect a sixty-day prescriptive period.

. See La. R.S 9:2601, et seq.; La. R.S. 47:1671; see, e.g., Greer v. BP America Production Co., 2014-450 (La.App. 3 Cir. 11/5/14), 150 So.3d 621, 624, writ denied 2015-2558 (La.2/27/2015), 159 So.3d 1070.

. Ms. Floyd's authority to bind Harrah's is questionable, at best, and while a presumption that Ms. Floyd had authority to bind Harrah’s may have been applicable in this case, Ms. Floyd was upfront with the Collector concerning the need to have an officer of Harrah’s sign the updated form. See R.S. 47:1671 (creating a conclusive presumption that, when a representative of a legal entity signs an agreement to suspend prescription, such representative is authorized to sign on behalf of that entity).