759 So.2d 865 (2000)
Virginia Lisua LIZAMA, Remeaid Lisua Celisa and Nicanor Lisua
v.
Johnnie E. WILLIAMS and His Liability Insurance Carrier, Government Employees Ins. Co.
No. 99-CA-1040.
Court of Appeal of Louisiana, Fifth Circuit.
March 22, 2000.
*866 Robert R. Faucheux, LaPlace, Louisiana, Counsel for plaintiffs-appellees.
Charles F. Wartelle, New Orleans, Louisiana, Counsel for defendants-appellants.
Court composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.
This matter is an appeal from a judgment compelling settlement between appellant and appellees, which judgment by implication vacated a previous order declaring the underlying action abandoned. At the outset we note that the matter is before us in something of an unusual posture. Counsel for appellees, Robert Faucheux, who, it seems, may have never had direct contact with appellees themselves, has filed only correspondence in our Court stating that he has "no opposition" to the appeal. If this renders our review of the record somewhat more perfunctory than usual, the record nevertheless confirms the original finding that the matter was abandoned. We therefore reverse the judgment appealed from.
The matter originated and progressed as follows. Suit was instituted with a Petition for Wrongful Death on October 19th, 1995. Plaintiffs-appellees are Virginia Lisua Lizama, Remeaid Lisua Celis and Nicanor Lisua, surviving heirs of the wrongful death victim, Enrique Lisua. The petition shows that appellees are not Louisiana domiciliaries: all reside, or resided, when this incident occurred, in Saipan, in the Commonwealth of Northern Mariana Islands. Defendant-appellant is the Government Employees Insurance Company (GEICO), the auto liability carrier for defendant insured Johnnie E. Williams. As the matter stands, there is almost nothing in the record detailing the facts of the automobile accident or the injuries which caused Enrique Lisua's death. However, apparently, some liability was admitted under the GEICO policy, and the parties entered into an oral agreement to settle the claim. A check, dated July 29th, 1997, was forwarded to counsel for appellees along with settlement documents for appellees to execute. The check was never negotiated, however, and the record instead shows the following sequence of events.
Aside from the original petition, the matter had progressed leading up to the *867 settlement offer, and actually up until the abandonment proceeding, only by way of correspondence to and from appellees' attorney, Robert Faucheux. On July 27th, 1996, Faucheux's office sent a letter to Virginia Lizama to recommend the settlement offer and requesting that the family forward documentation proving heirship. In August Faucheux's office received a letter from Michael W. Dotts, an attorney in Saipan, which asked Faucheux to provide information about the accident and insurance coverage. On August 20th, 1996, Faucheux's office responded to Dotts's letter stating that Faucheux had been retained by a friend of the decedent to "make a claim" on the family's behalf and that suit had been filed in the matter simply to avoid prescription. On August 15th, 1997, Faucheux sent to Dotts the settlement documents and requested that Dotts return them along with power of attorney documentation so that Faucheux could negotiate the settlement check. On August 14th, 1998, Faucheux wrote to Dotts again requesting return of the documents needed to finalize the settlement.
On December 18th, 1998, GEICO filed a Motion to Dismiss on Grounds of Abandonment. The order dismissing the action was signed on December 21st, 1998.
On March 23rd, 1999, Faucheux filed a Motion for Nullity of Judgment seeking to have the above order vacated and requesting the trial judge to order the issuance of another check. As grounds for nullity, the motion simply recited the facts surrounding the settlement negotiations: the motion alleged that the settlement negotiations had been finalized and were binding. The motion further indicated that Faucheux's office had "recently received" a telephone number for Virginia Lizama, who had indicated willingness to complete the settlement documents.
Hearing was held on the motion on June 25th, 1999. At the hearing, no testimony was offered; Faucheux again simply related the facts which he alleged created a binding settlement. In addition, he stated that one of the plaintiffs (perhaps Virginia Lizama, named in the motion), as of the hearing date, was "now living in the United States" and would be able to execute settlement documents on behalf of the family.
The trial judge's comments during the hearing indicate that he did find the existence of a binding settlement, and perhaps, based on the representations that the paperwork could shortly be completed, entered judgment giving appellees ninety days in which to complete the papers or suffer dismissal, and ordering GEICO to issue another check. This judgment was signed on August 5th, 1999.
The settlement was not finalized, however, and correspondence again commenced between Faucheux and appellees in Saipan. On June 28th, 1999, Faucheux notified Virginia Lizama that the family had ninety days in which to sign the documents or the case "would be dismissed." On July 12th, 1999, Faucheux forwarded correspondence to Virginia Lizama, informing her for a second time that the parties had ninety days in which to finalize the settlement. Finally, on October 5th, 1999, Faucheux forwarded power of attorney forms to Virginia Lizama and requested that the family sign and return them. The record shows no response from appellees.
Appellant's suspensive appeal had been filed on August 13th, 1999; Faucheux has responded to the appeal by filing the noted letter indicating that he has no opposition to the appeal.
On appeal, GEICO raises as error both the improper use of nullity proceedings to attack the abandonment ruling and the lack of any proper grounds to support a finding of nullity. In addition, GEICO argues that the order declaring the matter abandoned had been correct.
Because GEICO's assertions are in essence correct, we reverse the Judgment of August 5th, 1999, which, even if only by implication, vacated the abandonment order.
*868 Appellant's motion for nullity sought to have declared null the order of abandonment which had been previously signed in the matter under LSA-C.C.P. art. 561.
LSA-C.C.P. art. 561, in pertinent part, reads as follows:
A. (1) An action is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years ...
(2) This provision shall be operative without formal order, but, on ex parte motion of any party or other interested person by affidavit which provides that no step has been taken for a period of three years in the prosecution or defense of the action, the trial court shall enter a formal order of dismissal as of the date of its abandonment ...
We note initially that the appellees' attack on the abandonment order would more properly have been raised in either a direct appeal or a motion for new trial. Succession of Mizell, 97-0127, at p. 4 (La. App. 1st Cir. 2/20/98), 708 So.2d 805, 807, writ denied, 98-1056 (La.5/29/98), 720 So.2d 670. Appellant, however, did not raise any objections grounded in procedure below. And further, since appellees' allegations can be read to urge a vice of substance, a proper ground for nullity, we will review the availability of nullity relief based on an assumption that this is what they sought to plead.
An action to annul may be brought for either vices of form or substance. LSA-C.C.P. art. 2001; Hollander v. Wandell, 97-556 (La.App. 5th Cir. 11/12/97), 703 So.2d 742. There is no suggestion that the abandonment order contains any vice of form: such defects occur when judgments are rendered against incompetents or where there is no service on a competent person or when the rendering court lacks subject matter jurisdiction. LSA-C.C.P. art. 2002. A vice of substance occurs when a judgment is obtained "... by fraud or ill practices." LSA-C.C.P. art. 2004. Though, as noted, appellees did not specifically plead such grounds in their motion, we will assume that they meant to allege as much. We interpret, and phrase, appellees' argument in this way. Because there had been a binding settlement the time limitations set out in LSA-C.C.P. art. 561 should not commence to run and abandonment could not toll. Therefore, appellant's actions in seeking the abandonment order would have been, though certainly not fraud, perhaps "ill practices."
This theory cannot stand, however: the record does not show that any binding settlement was actually confected between appellees and GEICO. To be binding, or enforceable, a settlement must be in writing. To be afforded the protections given contractual obligations, the settlement "... must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding ..." LSA-C.C. art. 3071; DeSoto v. DeSoto, 96-1079, at p. 3 (La. App. 5th Cir. 4/29/97), 694 So.2d 1043, 1045 (emphasis supplied). Further, ongoing negotiations do not necessarily relieve the negotiating parties of their duty to protect the court record once suit has been filed. See Chevron Oil Co. v. Traigle, 436 So.2d 530, 533 (La.1983). And finally, evidence of "settlement" consisting only of correspondence between attorneys is not sufficient to bind the parties. See Mayeaux v. Denny's Inc., 95-453, at p. 4 (La.App. 5th Cir. 10/18/95), 663 So.2d 822, 825.
The settlement documents in the instant case were never signed by any party. Nor is there any other unequivocal proof that appellees did intend to accept the settlement. Correspondence from the parties' attorney in Saipan indicates only that the parties had been considering the settlement and that they wanted more information before definitely agreeing. There is nothing in the record in writing from appellees themselves. Further, the record is actually unclear on whether Faucheux had spoken with any plaintiff recently before the nullity hearing and which the *869 transcript seems to show. We have, really, only letters from Faucheux in which, while he without doubt recommended the settlement, he did not subsequently convey any impression that the offer had been accepted.
There was no legally binding settlement. The article 561 time limitations began to run, did run, and the tolling of the article provided grounds for appellant's rule to have the action abandoned. Appellees have not shown any "fraud or ill practices" which would support a judgment nullifying the abandonment.
We note, to conclude, that appellees have not otherwise shown grounds which would have prevented application of article 561. The last document filed into the record had been appellant's answer to the suit; the rule for abandonment was filed three years after this document had been. As noted, the record seems to show that the suit was only filed to avoid prescription, so we cannot say without hesitation that appellees intended to pursue the matter even to the extent of filing suit. We can't see that appellees ever gave Faucheux any indication of what their intentions really were. They did not even take advantage of the second chance to settle the suit given in response to the nullity motion. They were informed, and notice is not questioned, of the ninety-day cutoff after the hearing, and under threat of dismissal, though apparently one of them could easily have communicated with Faucheux, none of them did so. The record shows without doubt that the matter has long been abandoned by appellees.
Therefore, we vacate the Judgment below dated August 5th, 1999, thereby extinguishing any obligation on GEICO's part to issue a second settlement check to appellees.
REVERSED.