SUSAN M. CHEHARDY, Judge.
|2This is a suit by a bank on a promissory note, in which the district court granted the bank’s motion for summary judgment, finding that one of the guarantors of the note is liable for the amounts incurred, and granting attorney’s fees in amount of $10,000 to the bank. The defendant appeals and the bank answers the appeal. We affirm.
FACTS
On June 23, 2008, Regions Bank (“Regions”) filed suit for breach of a promissory note against Cabinet Works, L.L.C., as principal, and against Chad C. Adams and Christopher Adams as continuing guarantors. Regions sought to recover $242,810.97 in principal, with interest to June 5, 2008 in the amount of $2,549.40, and interest thereafter at the default rate of 18% per annum until paid, plus late fees in the amount of $194.00, attorney’s fees of 25% of the principal and interest due, and all costs of the proceedings.
The petition alleged that Regions is the holder and payee of a promissory note dated December 1, 2006, made payable to Regions Bank and executed by Cabinet Works, L.L.C., through Chad Adams (“Chad”) and Christopher (“Chris”) Adams as members of the limited liability company.[1] The petition stated that to Insecure payment of the note, Chad and Chris each had executed a commercial guaranty dated December 1, 2006, copies of which were attached to the petition. The petition alleged further that, after giving all credits and rebates according to law, the entire balance on the note, plus interest, attorney’s fees and costs, was due and unpaid.[2] *948 Finally, the petition stated that the payment due on May 1, 2008 was not timely nor fully paid, nor had any subsequent payments been made, so that all sums were due and payable, pursuant to the acceleration clause in the note.
Because this appeal concerns only the claim against Chris, we address his pleadings alone, without regard to filings by the other defendants.
In his answer, Chris acknowledged the genuineness of both the promissory note he signed on behalf of Cabinet Works, L.L.C. and the commercial guaranty signed by him. However, he denied the claims as to the interest rates, the amounts due on the promissory note, and the amount of attorney’s fees sought.[3]
Regions entered a preliminary default against Cabinet Works, which was confirmed on February 17, 2009, with judgment rendered in favor of Regions Bank and against Cabinet Works, L.L.C. for the full amount of the demand.[4] The judgment reserved Regions’ rights against Chad and Chris, and also recognized the commercial guaranty given to secure payment of the amounts.
Regions filed a motion for summary judgment as to its claims against Chris and Chad. The district court granted summary judgment for the full amount of the debt against Chad on May 12, 2009, reserving Regions’ rights against Cabinet | ¿Works and Chris. The judgment also recognized the security agreement and commercial guaranty given to secure the payment of the debt.[5] Neither the default judgment against Cabinet Works, nor the summary judgment against Chad, are before us on this appeal.
With respect to Chris, Regions asserted there were no genuine issues of material fact, because Chris had admitted the genuineness of the documents filed in support of the petition and his signature, and had admitted the existence of the account, although he challenged the attorney’s fee provision of the note as unenforceable on the ground it requires payment of an unreasonable and excessive fee. Regions alleged further that Chris had not raised any affirmative defenses.
Chris filed an exception of res judicata, on the ground that the dispute between Regions Bank and himself had been compromised and settled. He relied on documents filed in support of the exception and in opposition to the motion for summary judgment.
Chris asserted that on December 18, 2008, Regions’ attorney, David Cohn, emailed Chris’s attorney, Kenneth Fonte. *949 In the e-mail message Cohn stated that Regions had agreed to accept $175,000 to release Chris from his guaranty related to the Cabinet Works debt. Cohn advised Fonte to prepare a release document to be signed by the bank and to e-mail it to Cohn for review and comment. Cohn further advised that the payment must be finalized before year-end.
Chris asserted that he obtained a cashier’s check in the amount of $175,000 payable to Regions Bank on December 18, 2008. On December 22, 2008, Regions, through Cohn’s co-counsel Bartley Bourgeois, submitted a release to Chris. On December 28, 2008, Chris and his wife signed the release. On | ¡¿December 24, 2008, Chris notified Regions that the cashier’s check had been obtained, the release signed, and that he was ready to perform. Regions, however, refused to sign the release prepared by its counsel. Instead, Regions announced that it would not release Chris from the continuing guaranty.
Chris argued that the e-mail message prepared, submitted, and electronically signed by David M. Cohn, as counsel for Regions Bank, on December 18, 2008, accepting the settlement offer made by Chris, established a compromise of this litigation between the bank and Chris.
In opposition to the exception of res judicata, Regions asserted that Chris could not plead compromise as a bar to Regions’ claims, because compromise is an affirmative defense that must be specifically pleaded, but Chris’s answer to the petition had contained merely a general denial. Therefore, Regions argued, Chris’s failure to raise the affirmative defense of compromise in his general denial precluded him from raising it in opposition to the motion for summary judgment.
Further, Regions contended, even if he were allowed to raise it, it is unsupportable and cannot be proven, so that it does not create a genuine issue of material fact. Regions asserted that the e-mail correspondence was not binding on it because the messages were signed with initials by the senders, but those were not intended to serve as binding electronic signatures pursuant to the Louisiana Uniform Electronic Transactions Act (La. R.S. 9:2601 et seq.).
In addition, Regions cited the Louisiana Banking Law, La. R.S. 6:1 et seq., as an exception to other general statutory or codal provisions dealing with compromises. Specifically, Regions relied on La. R.S. 6:1122, which states, “A debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.” Regions argued that the alleged Rcompromise forming the basis of Chris’s exception of res judicata is nothing more than a hodgepodge of selected e-mail correspondence pieced together to assert that the parties entered into a valid settlement agreement. Regions contended that Chris does not meet the requirements of La. R.S. 6:1122 to maintain an action on a compromise.
On January 11, 2010, the district court overruled the exception of res judicata. The court stated,
... [I]t is apparent from the numerous emails introduced into evidence at the hearing that there was not agreement on all language of the settlement, and it is clear that all terms of settlement had not been agreed upon by December 16, 2008. Some issues were still in negotiation. Regions’ Exhibit 1, page 18 is an email dated December 18, 2008 at 4:06 PM from Ken Fonte to Bartley Bourgeois. In it proposed language changes in the settlement was discussed, and Mr. Fonte stated that “it would be a deal breaker if his spouse is not release, [sic]” While this issue was ultimately *950 resolved, other issues raised in subsequent emails were not. Nor were documents finalized by the end of the year, as Cohn had insisted as a condition of acceptance.
A question also exists as to whether the initials on the December 16, 2008 email [Exhibit CA-1] constitute an electronic signature. In light of all emails, it is difficult for the court to conclude that they were affixed with intent to sign a settlement within the meaning of La. R.S. 9:2601 et seq. Regardless, there is no purported signatures by the debtor and creditor.
When taken as a whole, the court cannot conclude that there was a settlement.
Regions’ motion for summary judgment was taken under advisement on July 23, 2010, and the court issued a written judgment on November 9, 2010. The court granted summary judgment in favor of Regions and against Chris, including attorney’s fees in the amount of $10,000. The following written reasons were incorporated in the judgment:
17After considering the law and evidence, hearing argument of counsel, and considering the denial of Christopher Adams[’] exception of res judicata, the court finds that there is no genuine issues of material fact that Christopher Adams is indebted to plaintiff for amounts incurred on the Promissory Note, Limited Liability Company’s Resolution to Borrow/Grant Collateral and the Continuing Guarantees, and the Security Agreement entered into between plaintiff and defendant. Christopher Adams did not contest that the note exists, that he signed it, that it contains continuing guarantee and it is secured. Christopher Adams failed to put forth any specific facts to show that genuine issues of material fact existed or that plaintiff was not entitled to judgment as a matter of law. Further, plaintiffs [sic] request for attorney fees in the amount of Sixty Thousand and 00/100 Dollars ($60,000.00) is not reasonable nor is it supported by any evidence in the record. The court finds that a conservative and appropriate award based on the record would be in the amount of Ten Thousand Dollars and 00/100 ($10,000.00) in attorney fees.
On appeal Chris contends the district court erred in following respects:
(1) By overruling Chris’s exception of res judicata;
(2) By granting summary judgment in favor of the bank; and
(3) By awarding the bank attorney’s fees of $10,000 against Chris, which is higher than the $2,000 awarded against Cabinet Works.
In answer to the appeal, Regions seeks an increase in the attorney’s fees award.
RES JUDICATA
Chris argues the demands against him are barred by res judicata because Regions agreed to compromise the dispute and to release him from liability. He contends the December 16, 2008 e-mail message by David Cohn to Kenneth Fonte, accepting the settlement offer made by Chris, established a compromise of Regions’ claim against him in this litigation. He asserts that Cohn’s initials on the email message constituted an electronic signature that binds Regions, as Cohn’s client.
In addressing this assignment, we must look at the entire sequence of e-mail correspondence between the parties’ counsel, which we set out below. These messages were among the documents submitted in connection with the motion for summary judgment and the exception of prescription. The messages were Re-mail corre *951 spondence between Chris’s counsel, Kenneth Fonte, and Regions’ attorneys, David Cohn and Bartley Bourgeois. The messages consisted of the following:
1. E-mail from Fonte to Cohn, December 16, 2008, 2:24 PM:
David: Please update me on status of your client’s consideration of Chris Adams’ $175,000.00 settlement offer. Thanks, Ken
2. E-mail from Cohn to Fonte, December 16, 2008, 4:03 PM:
Ken,
Regions Bank has said they will take the $175,000 to release Chris Adams from his guaranty related to the Cab Works debt only. The documents and payment must be finalized before year end as a condition for accepting the payment. Payment must be made by certified funds payable to Regions Bank. Please go ahead and prepare the release if you want a special release document to be signed by the bank and email it to me for review and comment. Make sure the release document reserves all rights against Chad Adams and any other responsible party. I will have some provisions to include myself that the bank will require. Thanks.
DMC
3. E-mail from Fonte to Cohn, December 18, 2008,1:31 AM:
David: See attached proposed act of compromise, release and discharge. I will deliver my client’s check to your office sometime today (12/18/08). Thanks. Ken Fonte
4. E-mail from Fonte to Cohn, December 18, 2008,1:10 PM:
David: My client said that he does not want any delay associated with check clearing. Therefore, I will deliver a cashier’s check tomorrow to replace his personal check. Please do not negotiate the personal check that I | delivered today. Also, if your client insists that Chris Adams sign an acceptance, then please try to complete your revisions this evening if possible, and email it to me. If you can accommodate me, then I will get Chris Adams to sign the acceptance tonight, and I will deliver it to you with the cashier’s check tomorrow. Thanks. Ken
5. E-mail from Cohn to Fonte, December 18, 2008,1:43 PM:
We will hold it for you to pick up when you bring the other check.
6. Cashier’s check No. 13708196 from Christopher P. Adams to Regions Bank, dated 12-18-2008 and drawn on Whitney National Bank, in the amount of $175,000.00.
7. E-mail from Bourgeois to Fonte, December 18, 2008, 3:01 PM:
Ken:
Attached are our revisions to the settlement agreement which have been reviewed by David. Regions has not had an opportunity to comment on this draft and suggestions may be forthcoming. Please let us know if you have any comments on the attached.
Thanks, Bartley
8. E-mail from Fonte to Bourgeois, December 18, 2008, 4:06 PM:
Bartley: ... I ask you to reconsider certain changes. First, you make use of the phrase “personally only” — while I understand your objective, it would be a deal breaker if his spouse is also not released — they have a community property regime, so to release Chris without releasing Lorri gains them nothing. Also, you make repeated use of the limiting language in the release language “under the Promissory Note” — I wouldn’t have a problem if you added “and the Commercial Guaranty signed *952 by Christopher Adams” to that phrase. Chris’ liability under the Promissory Note is derivative through the Commercial Guaranty. Once again, it is a deal killer if the commercial guaranty for that note is also not clearly and unequivocally released, discharged, terminated, extinguished — Chris would be paying for nothing. Additionally, I don’t understand why Regions should expect a universal release from Chris, while it is pushing so hard (for reasons I understand and support) to limit the release given to him to the Promissory note and 24th JDC suit. It seems to me that any release by Chris should have the same limiting language that the bank expects tolmgrant him — to this deal only. While I need to review the document revisions in more detail, I offer the general comment that the remainder of the changes appear okay. Please review my comments, and try to make some adjustments to address my concerns, and send back to me — today if at all possible. It would be appreciated if we can conclude this matter tomorrow. Thanks. Ken
9. E-mail from Fonte to Bourgeois, December 18, 2008, 4:27 PM:
Bartley: In Paragraph 8, you use the phrase “as well as any other responsible party”, which if left unlimited would arguably include Chris and Lorri Adams. I request that you add to that phrase “except Christopher P. Adams and Lorri Adams”, then it[’]s okay. Ken
10. E-mail from Bourgeois to Fonte, December 19, 2008,10:31 AM:
Ken:
I have reviewed your comments. Please add Lorri to the document for release of any liability she may have through their community and add a place for her to sign with Chris (as well as an appearance clause for her).
The purpose of the limitation of the commercial guaranty release is in the instance the guaranty is used in connection with another loan. The guaranty will not be released for any loan other than the one associated with the promissory note described in the agreement. The language in the release as written extinguishes the promissory note and guaranty insofar as Chris (and Lorri for that matter) is concerned but will maintain the guaranty as it would apply to any other loans, notes, etc. I believe this to be language necessary to protect Regions from releasing a guaranty in its entirety that may be effective on other loans (if they exist which I do not know).
The release language to Regions is standard language for every Regions release or forbearance. We do not believe it to be onerous in nature, but will forward any changes you suggest to Regions.
If you wish to add Chris and Lorri to paragraph 8 as exceptions to the phrase “any other responsible party,” please do so as it is not meant to include them again as a responsible party as evidenced by the language/sections in the agreement whereby that liability is released.
Once you make the changes, I will review and forward to the client for same.
Thanks, Bartley
11.E-mail from Fonte to Cohn and Bourgeois, December 22, 2008, 10:13 AM:
InDavid and Bartley: See attached proposed comp/rel/disch which addresses the concerns expressed by your proposed revisions, and my comments with respect thereto. Hopefully, we can put this to bed asap. Let *953 me know. Once you confirm by email that your client is willing to sign the attached document, I will have my clients sign it, and deliver the signed document together with the cashier’s check to you[r] office. Thanks. Ken
12. E-mail from Bourgeois to Fonte, December 22, 2008, 4:13 PM, with attached draft of “Compromise, Release, and Discharge” between Regions Bank and Christopher P. Adams and Lorri P. Adams.
13. E-mail from Fonte to Bourgeois and Cohn, December 22, 2008, 5:14 PM:
Bartley and David: Attached is the last version you sent to me slightly reformatted so that the signature lines would fall in an appropriate place on the last page. I did not make any changes to the text you submitted. Unless I hear to the contrary, I assume this version is acceptable, and I will have my clients sign it. Chris Adams will be available to deliver the signed document and the cashier’s check as soon as I receive work of your client’s final approval. Ken
14. “Compromise, Release and Discharge” signed by Christopher P. Adams and Lorri P. Adams, dated December 23, 2008, notarized by Kenneth C. Fonte, Notary Public, and signed by two witnesses.
15. E-mail from Fonte to Bourgeois and Cohn, December 24, 2008, 12:41 PM:
Bartley and David: The commercial guaranty attached to Regions’ petition has absolutely nothing to do with the Lakeview loan. I reviewed the document and it clearly and unequivocally identifies the borrower as Cabinet Works. The borrower on the Lake-view loan is Chad Adams. Cabinet Works has absolutely nothing to do with the Lakeview loan. I predict that if you contact Regions’ attorney handling the Lakeview loan ..., then a separate guaranty will probably surface. On the other hand, if your client is relying on the commercial guaranty attached to your petition as the basis for my client’s liability on the Lake-view loan, then my client has no liability on the Lakeview loan. If that is the case, then Regions ought to be appreciative of my clients’ warranties and representations concerning the Lakeview loan. Chris Adams does not have any documents | ^concerning the Lakeview loan, and Regions wouldn’t provide him with any documents when he requested them. My clients expect a termination of the commercial guaranty attached to your petition for their money. That document is a “continuing” guaranty, which means that Regions could advance lend fresh money to Cabinet Works and my client would be on the hook — my client is not going to allow a possibility, no matter how small the risk, of such an event happening. Let me know if Regions Bank wants the deal. As I told you, Friday December 26 is my last work day in Louisiana for the year. I am traveling to Texas on December 29, and I have a brief due ... on December 30.... I would like to hear good news from you; however, it is starting to appear that Regions is looking for a reason to kill it. I hope that I am wrong. Have a good Christmas. Ken
16.E-mail from Fonte to Bourgeois, December 24, 2008,1:15 PM:
Bartley & David: Chris Adams told me that he was a co-signer on Lake-view. He is not trying to run from that debt. He acknowledged it and excluded it from the settlement. My client is being forthright and forthcoming about the Lakeview loan, but *954 he is not going to sign a document that links the unrelated commercial guaranty on the Cabinet Works debt to the Lakeview loan — because they are not related. My clients have signed the final draft version of the compromise, and have á cashier’s check for $175,000.00 READY TO PERFORM. Ken
17. E-mail from Bourgeois to Fonte, December 24, 2008,1:37 PM:
Ken:
I have spoken to Regions. They will not release the continuing guaranty of Chris as requested. They are only released the note and the debt associated therewith. Regions will not risk releasing any other debts that may be connected with the guaranty. I will be out of the office but will be available by email if you have any questions.
Merry Christmas,
Bartley
18. E-mail from Fonte to Bourgeois, December 26, 2008, 9:03 AM:
Bartley: How does the bank propose to protect my clients from the bank making future loans to Cabinet Works at the request of CHAD Adams based on my clients’ guaranty as part of some workout to benefit both the bank and Chad Adams? The problem with the | ^“CONTINUING” guaranty is not the Lakeview loan — it is the FUTURE!!! Is anyone at the bank reading its own documents? The termination provision of the guaranty (see: “Cancellation”) EXPRESSLY PRESERVES ALL EXISTING DEBT AGAINST THE EFFECT OF THE CANCELLATION!!! What more does the bank need? Does it make them more comfortable to put that already existing language in the text of the settlement? If so, then I have no problem adding the following (taken from the continuing guaranty): Termination of the commercial guaranty “shall affect only, and shall be expressly limited to,” Christopher Adams’ and Lorri Adams’ “continuing obligations and liability to guarantee” Cabinet Works, L.L.C.’s “indebtedness incurred, originated and/or extended (without prior commitment [sic]) after the date” of this act of compromise, release and discharge, with guarantor “remaining fully liable under the commercial guaranty for any and all of of [sic] Borrower’s indebtedness” (except for the compromised, release [sic] and discharged loan loan [sic] described by the petition and exhibits in the action pending before the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, Division “J”, No. 662-409, entitled “Regions Bank v. Cabinet Works, L.L.C., Chad C. Adams, and Christopher Adams”) “incurred, originated, extended or committed, to prior to the date of this act of compromise, release, and discharge.”
The foregoing language was lifted DIRECTLY out of the termination limitation language of commercial guaranty modified only to refer directly to my clients, the act of compromise and the released debt.
I find it hard to believe that your client would have a problem using its own contract language to solve this issue. Please give it a try. By the way, please do not take any of my criticism of your client’s response personally. I have not forgotten that you blessed (without having the authority to commit to) the final draft version that my clients have already signed.
As I previously explained to you, today is my last business day of the year with respect to availability to deal with this matter. Ken
*955 19. E-mail from Fonte to Bourgeois, December 26, 2008,1:46 PM:
Bartley: See paragraph 7 of the attached revised final draft which incorporates the change mentioned in my earlier email of today. If you can get approval of this document, then we can proceed. I am going to have my chent’s [sic] execute it before I leave for Texas, so if Regions signs then the deal will be done. Let me know asap. Ken
[ ⅛20. E-mail from Fonte to Bourgeois, December 31, 2008, 9:55 AM:
Bartley: ... Any word from your client about the revision that I sent to you at the end of last week? Ken
21. E-mail from Bourgeois to Fonte, December 31, 2008,10:00 AM:
Ken,
I sent the doc to Regions for review and have not heard from her yet. She was out Monday and Tuesday like you but I believe was to be back today. I will try to reach her and let you know.
Bartley
22. E-mail from Fonte to Bourgeois, January 5, 2009, 1:23 PM:
Bartley: Status? Ken
23. E-mail from Bourgeois to Fonte, January 7, 2009, 8:48 AM:
Ken:
[[Image here]]
Regions is declining the settlement offer as the parties have been unable to get a release worked out that is agreeable to both parties. They will proceed accordingly against all named defendants.
[[Image here]]
Thanks, Bartley
24. E-mail from Bourgeois to Fonte, January 12, 2009,11:01 AM:
Ken:
We have spoken to Regions who has advised that they will settle this matter for payment in full from your client to release/dismiss him from the lawsuit. They wish to move forward with the lawsuit filed and do not want to settle for less at this time.
I will return your clients’ personal check previously sent to this office.
Thanks, Bartley
25.E-mail from Fonte to Bourgeois, January 12, 2009,1:25 PM:
Bartley: It is my client’s position that the matter has been compromised for the sum of $175,000.00. My client will request that the court enforce the settlement agreement. Ken
11fiTo be a valid compromise a contract must satisfy the requirements of the law relating to compromise. “A compromise shall be made in writing or recited in open court....” La. C.C. art. 3072. “A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express.” La. C.C. art. 3076.
Louisiana law recognizes electronic communications and electronic signatures, through the Louisiana Uniform Electronic Transactions Act, La. R.S. 9:2601 et seq. “A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.” La. R.S. 9:2607(A). “A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation.” La. R.S. 9:2607(B). If a law requires a record to be in writing, or if the law requires a signature, an electronic record or an electronic signature satisfies the law. La. R.S. 9:2607(C)-(D). “ ‘Electronic signature’ means an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record.” La. R.S. 9:2602.
*956 E-mail can fulfill the requirement of La. C.C. art. 3072 as a writing.[6] To constitute an electronic signature, however, the “electronic sound, symbol, or process ... associated with a record” must be executed or adopted by a person with the intent to sign the record. La. R.S. 9:2602. There must be a showing that the signer intended to do a legally significant act.
Here, the initials or other name indications on the messages here do not establish that Cohn and Bourgeois intended those to be electronic signatures for purposes of the Louisiana Uniform Electronic Transactions Act.
| lf,Despite the fact that Chris signed the draft agreement provided by counsel for Regions and obtained a certified check for the amount of $175,000 on the same day, it is clear from the verbiage in the e-mail messages that both Regions’ counsel and Chris’s counsel contemplated further discussion and negotiation regarding terms of the release agreement.
Further, “evidence of ‘settlement’ consisting only of correspondence between attorneys is not sufficient to bind the parties.” Lizama v. Williams, 99-1040, p. 5 (La.App. 5 Cir. 3/22/00), 759 So.2d 865, 868.
It is of no moment that a party’s attorney finds a negotiated settlement satisfactory; a settlement must be in writing. Nor is the requirement of a writing to effect a compromise satisfied by the signature of a party’s attorney alone (unless such authorization is express under LSA-C.C. art. 2997). The general authority granted to an attorney in an attorney/client contract of employment to settle the client’s case constitutes only authority to negotiate a settlement. [Footnotes omitted.]
Sims v. USAgencies Cas. Ins. Co., 2010-1120, p. 8 (La.App. 1 Cir. 12/22/10), 68 So.3d 570, 575, writ denied, 2011-1927 (La.11/14/11), 75 So.3d 943, citing Bennett v. Great Atlantic & Pacific Tea Company, 95-0410 at p. 4, 665 So.2d at 86, and Lizama v. Williams, 99-1040, p. 5 (La.App. 5 Cir. 3/22/00), 759 So.2d 865, 868.
Considering the messages between the parties, we find no error in the trial court’s determination that the parties did not agree on all language of the settlement and that all terms of the settlement had not been agreed upon and some issues were still in negotiation. Although some issues raised were resolved, others were not. The documents were not finalized by the end of the year as required in the December 16, 2008 message from Cohn to Fonte.
Further, as pointed out by the trial court, there is no showing that any initials or other “signature” on the messages from Cohn and Bourgeois were affixed with 117intent to sign a settlement as required by La. R.S. 9:2602. Finally, there was never a document that was signed by both the debtor and the creditor, as required by La. R.S. 6:1122.
Accordingly, the trial court did not err in overruling the exception of res judicata.
SUMMARY JUDGMENT
Chris asserts Regions was not entitled to summary judgment because the relief sought is barred by res judicata, the con-clusory affidavit of a bank officer was insufficient to carry the burden of proof, the promissory note was extinguished by a *957 judgment against Cabinet Works, the bank acted with bad faith by obtaining a judgment that confirmed a continuing guarantee without giving Chris notice and an opportunity to be heard, and the bank failed to comply with the district court’s rules in its memorandum.
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact, and summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action. A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.”
On a motion for summary judgment, the burden of proof is on the movant. If, however, the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require that all essential elements of the adverse party’s claim, action, or defense be negated. Instead, the moving party must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his eviden-tiary | isburden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the movant is entitled to summary judgment.
Summary judgments are reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the movant-appellant is entitled to judgment as a matter of law. [Citations omitted.]
Power Marketing Direct, Inc. v. Chris Foster, 2005-2023, pp. 8-9 (La.9/6/06), 938 So.2d 662, 668-69.
Whether the Relief Sought Is Barred by Res Judicata
In our discussion above, we uphold the trial court’s ruling denying the exception of res judicata. Hence, res judicata is no defense to the motion for summary judgment in this case.
Whether the Bank Officer’s Affidavit Was Insufficient and Whether the Bank’s Failure To Comply With the District Court’s Rules in Its Memorandum Precluded Summary Judgment
The first direct defense Chris raised to the motion for summary judgment is that the affidavit provided by Regions was insufficient. The document, titled “Affidavit of Correctness” was made by Debbie Ren-froe. It stated that Renfroe is “a duly authorized representative of Regions Bank, judgment creditor in the above captioned matter, and is duly qualified and authorized to make this affidavit.” It continues as follows:
That she has under her care, custody and control, the account file of Cabinet Works, L.L.C., Chad Adams and Christopher Adams, and that she has reviewed the entire account file of REGIONS BANK and all records of plaintiff regarding the account of defendants. She therefore makes this affidavit based on facts of her own personal knowledge, and that the records of plaintiff reflects [sic] that the defendants have an outstanding balance on their account in the sum of TWO HUNDREDJjgFORTY TWO THOU *958 SAND EIGHT HUNDRED TEN AND 97/100 ($242,810.97) DOLLARS, plus interest to June 5, 2008 in the amount of TWO THOUSAND FIVE HUNDRED FORTY NINE AND 40/100 ($2,549.40) DOLLARS, plus interest after June 5, 2008 at the default rate of eighteen (18%) percent of the principal and interest due and owing, and for all costs of these proceedings. That all proper credits and rebates have been applied and that the allegations contained in the petition of plaintiff are true and correct to the best of her knowledge and belief.
Chris contends Regions was not entitled to judgment as a matter of law.
In opposition to the motion for summary judgment, Chris filed an affidavit by his attorney, Kenneth Fonte, in which Fonte related the various events on which Chris relied as the basis for his assertion that Regions had compromised its claim and that res judicata should apply. Although the Fonte affidavit set out the e-mail communications between the parties in detail, it did not offer information to rebut the statements made in Renfroe’s affidavit.
In his memorandum opposing the motion for summary judgment, Chris asserted that Regions’ memorandum submitted in support of its motion for summary judgment violated La. Dist. Ct. R. 9.10(1), in that it fails to include a list of the legal elements necessary for the mover to be entitled to judgment, as required by La. Dist. Ct. R. 9.10(l)(a). Chris contended the Renfroe affidavit is deficient because it speaks of the balance due on an “account” without any mention whatsoever of a continuing guaranty or promissory note. In contrast, the petition alleges a cause of action against Chris based on a continuing guaranty securing a promissory note — not an action on an “account.”
Chris asserted that the legal elements for recovering on an open account are distinct from those applicable to enforcing a continuing guaranty that secures a promissory note.
12nChris pointed out, further, that Regions’ memorandum failed to include a list of material facts that the mover contends are not genuinely disputed, as required by La. Dist. Ct. R. 9.10(b)(2), and that Regions’ memorandum failed to associate each “not genuinely disputed fact” claimed with a specific reference to the document proving it, together with a designation of the pertinent part of the containing proof, as required by La. Dist. Ct. R. 9.10(l)(c).[7]
Chris stated those omissions unjustly impaired his ability to comply with La. Dist. Ct. R. 9.10(2)(a) in preparing his opposition to the motion. Chris argued he should not be required to guess which material facts Regions claims are “not genuinely disputed.” Further, he stated his answer to the petition, about which Regions stated he admitted “to the existence of the amount due,” in fact expressly denied Regions’ claimed “amount due.” He asserted that is a disputed fact that Regions ignores.
Chris also asserted that summary judgment should have been denied because the promissory note was extinguished by the judgment against Cabinet Works, L.L.C., pursuant to La. R.S. 13:4231(1). Hence, he contended, the guaranty he signed was extinguished as a matter of law.
*959 Ultimate facts and conclusions of law contained in supporting affidavits cannot be considered on a motion for summary judgment. Jones v. Gray Ins. Co., 07-650, p. 7 (La.App. 5 Cir. 2/6/08), 980 So.2d 1, 4; ACMG of Louisiana, Inc. v. Jones, 35,102, p. 5 (La.App. 2 Cir. 9/26/01), 796 So.2d 704, 707, writ denied, 01-2869 (La.1/11/02), 807 So.2d 240.
|j>TA trial court has discretion to dispense with the strict application of local rules when unnecessary to the resolution of a dispute. Hunt Petroleum Corp. v. Texaco, Inc., 2004-0729, p. 3 (La.App. 4 Cir. 12/1/04), 891 So.2d 36, 38. Where documents submitted in support of a motion for summary judgment are sufficient, the court is warranted in waiving the requirement for a statement of uncontested facts. Hibernia Nat. Bank v. Rivera, 07-962, p. 7 (La.App. 5 Cir. 9/30/08), 996 So.2d 534, 538. Where the mover’s memorandum lists the essential legal elements necessary for the mover to be entitled to judgment, including a list of material facts which the mover contends are not genuinely disputed as well as the documentation that supports the facts it contends are undisputed, the requirements of Rule 9.10(b)(2) are satisfied. Id., 07-962 at 6, 996 So.2d at 538.
Here, Regions asserted in the memorandum in support of the motion for summary judgment,
The plaintiff, Regions Bank, (hereafter, “Regions”), instituted suit in this matter by filing a Suit on a Lost Note with Commercial Guaranty. The defendant, CHRISTOPHER ADAMS, in proper person, answered the petition with a general denial, admits to the genuineness of the documents and his signature, admits to the existence of the account, and states that the attorney fee provision of the note is unenforceable; because it requires the payment of an unreasonable and excessive fee....
[[Image here]]
... [A] nonmoving party who opposes motion for summary judgment [is required] to submit evidence of specific facts establishing genuine issue of material fact. [Citation omitted.] Christopher Adams has submitted no such evidence nor made any allegations to raise any genuine issue of material fact and/or knowledges [sic].
[[Image here]]
... Christopher Adams has not raised any affirmative defenses....
In this matter, Christopher Adams admits the genuineness of the Promissory Note, Resolution and his signature on the same, the Continuing Guarantee [sic] and his signature thereon, as well as the Security [ ¡^Agreement and admits the existence of the amount due but states that the attorney fee provision of the note is unenforceable ... because it requires the payment of an unreasonable and excessive fee....
[[Image here]]
There being no contested genuine issue [of] material fact[,] Christopher Adams admitting to the genuineness of the Promissory note, Resolution and his signature on same, the Continuing Guarantee [sic] and his signature thereon, as well as the Security Agreement, and admitting to the existence of the account, ... the Court should render summary judgment in favor of Plaintiff....
Considering the documents filed in support of the motion, which include copies of the promissory note and the continuing guaranty, we find the statements in the memorandum and the content of the documents themselves sufficiently prove the claim made by Regions. Hence, these issues were not grounds to deny summary judgment.
*960 Whether the promissory note was extinguished by the judgment against Cabinet Works
There is no merit to this assignment because, first, the judgment against Cabinet Works specifically reserved Regions’ rights against Chris. Further, the promissory note and the continuing guaranty each contain language preserving rights against the signers of those documents regardless of actions involving other signatories. The Promissory Note states, in pertinent part:
WAIVERS. ... Borrower and each guarantor further severally agree that discharge or release of any party who is or may be liable to Lender for the indebtedness represented hereby ... shall not have the effect of releasing any other party or parties, who shall remain liable to Lender_ Any partial exercise of any rights and/or remedies granted to Lender shall furthermore not be construed as a waiver of any other rights and remedies; it being Borrower’s intent and agreement that Lender’s rights and remedies shall be cumulative in nature....
Similarly, the Commercial Guaranty provides:
1 ^GUARANTOR’S WAIVERS. Guarantor hereby waives:
[[Image here]]
(F) Any “one action” or “anti-deficiency” law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender’s commencement or completion of any foreclosure action, or any action in lieu of foreclosure.
(G) Any election of remedies by Lender that may destroy or impair Guarantor’s subrogation rights or Guarantor’s right to proceed for reimbursement against Borrower or any other guarantor, surety or endorser of Borrower’s indebtedness, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging Borrower’s indebtedness.
[[Image here]]
Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor’s full knowledge of its significance and consequences, and that, under the circumstances, such waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law.
The Commercial Guaranty provides further:
NO IMPAIRMENT OF GUARANTOR’S OBLIGATIONS. No course of dealing between Lender and Borrower (or any other guarantor, surety or endorser of Borrower’s Indebtedness), nor any failure or delay on the part of Lender to exercise any of Lender’s rights and remedies under this Guaranty or any other agreement or agreements by and between Lender and Borrower (or any other guarantor, surety or endorser), shall have the effect of impairing or releasing Guarantor’s obligations and liabilities to Lender, or of waiving any of Lender’s rights and remedies under this Guaranty or otherwise. Any partial exercise of rights and remedies granted to Lender shall furthermore not constitute a waiver of any of Lender’s other rights and remedies; it being Guarantor’s intent and agreement that Lender’s rights and remedies shall be cumulative in nature. Guarantor further agrees that, should Borrower default under any of Borrower’s indebtedness, any waiver or forbearance on the part of Lender to pursue Lender’s available rights and remedies shall be binding upon Lender *961 only to the extent that Lender specifically agrees to such waiver or forbearance |⅞4⅛ writing. A waiver or forbearance on the part of Lender as to one event of default shall not constitute a waiver or forbearance as to any other default.
Thus, under the language of the Continuing Guaranty, the judgment against Cabinet Works did not release Chris from his obligations to Regions.
Whether the bank acted with bad faith by obtaining a judgment that confirmed a continuing guarantee without giving Chris notice and ah opportunity to be heard
We do not address this issue, because it is a collateral attack on the judgment and is improperly raised in the proceeding on the judgment before us.
“A collateral attack is defined as an attempt to impeach the decree in a proceeding not instituted for the express purpose of annulling it.” Corcoran v. Gauthier, 97-0516 (La.App. 4 Cir. 1/7/98), 705 So.2d 1233, 1236, writ denied, 98-0342 (La.3/27/98), 716 So.2d 888.
A final judgment obtained by fraud or ill practices may be annulled. LSA-C.C.P. art. 2004. Such a judgment is not an absolute nullity. To annul a judgment obtained by fraud or ill practices a direct action, i.e., a new and separate proceeding, must be brought for that purpose in the court which rendered the judgment. Such a nullity may not be asserted collaterally. Filing a petition of nullity of judgment in existing proceedings, including the proceedings in which the judgment complained of was rendered is not a direct action. It is a collateral attack. (Citations omitted.)
Succession of Schulz, 622 So.2d 693, 695 (La.App. 4 Cir.1993), writ denied, 631 So.2d 1161 (La.1994).
ATTORNEY’S FEES
Chris’s final assignment is that the trial court erred by awarding the bank attorney’s fees of $10,000 against Chris, which is higher than the $2,000 awarded against Cabinet Works. At the same time, Regions’ answer to the appeal seeks an ^increase in the attorney’s fees award to 25% of the principal and interest awarded by the trial court.
The note states, “If Lender refers this Note to an attorney for collection, or files suit against Borrower to collect this Note, ... Borrower agrees to pay Lender’s reasonable attorneys’ fees in an amount not exceeding 25.000% of the principal balance due on the loan.”
The key here is the phrase “reasonable attorney’s fees.” The trial court made a determination of reasonableness by reviewing the record and assessing the amount of work involved. Regions pursued this lawsuit against three defendants and obtained separate judgments against each. Each was bound under the Promissory Note and/or a Continuing Guaranty to pay attorney’s fees in the event that Regions was required to litigate to recover on the debt. Regions is entitled to recover attorney’s fees from each defendant. We find no abuse of discretion in the amount awarded.
DECREE
For the foregoing reasons, the judgment is affirmed. Costs of this appeal are assessed against Christopher Adams.

AFFIRMED

. Regions asserted the promissory note was in the original sum of $250,000.00, and recited that the principal was due in full on December 1, 2007, with regular monthly payments to be made of all accrued unpaid interest due as of each payment date, beginning on January 1, 2007, with all subsequent interest payments due on the same day of each month after that until the note was paid in full.

. There is a discrepancy between the amount of principal set out in Paragraph 1 of the petition ($242,810.97) and the amount of principal stated in both Paragraph 9 and the *948 Prayer of the petition ($251,619.32). We find no explanation of the discrepancy. The higher figure may be an error, because the eventual judgments against Cabinet Works and Chad Adams both stated the principal amount as $242,810.97. Another discrepancy is that the petition is titled "Suit on Lost Note with Commercial Guaranty,” but the petition recites, "The original note is attached hereto and made a part hereof as Exhibit ‘A’."

. The full amount in the judgment against Cabinet Works is $242,810.07, plus interest to June 5, 2008 in the amount of $2,549.40, interest after June 5, 2008 at the default rate of 18% per annum until paid, plus late fees of $194, plus attorney’s fees of $2,000, and all costs.

. Like the judgment against Cabinet Works, the judgment against Chad was in the amount of $242,810.07, plus interest to June 5, 2008 in the amount of $2,549.40, interest after June 5, 2008 at the default rate of 18% per annum until paid, plus late fees of $194, and all costs. Against Chad, however, the court awarded attorney’s fees to Regions of 25% of the principal and interest due and owing.

. "If parties have agreed to conduct a transaction by electronic means and a law requires a person to provide, send, or deliver information in writing to another person, the requirement is satisfied if the information is provided, sent, or delivered in an electronic record capable of retention by the recipient at the time of receipt.” La. R.S. 9:2608(A)(1).

. La. Dist. Ct. R. 9.9 requires that a party who files a motion shall furnish a supporting memorandum that cites both the relevant facts and applicable law. La. Dist. Ct. R. 9.10(b)(2)-(3) require that a memorandum in support of a motion for summary judgment shall contain a "list of the material facts that the mover contends are not genuinely disputed,” and a "reference to the document proving each such fact, with the pertinent part containing proof of the fact designated.”