# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-483


PARK PLACE SURGERY CENTER, LLC DBA
PARK PLACE SURGICAL HOSPITAL

VERSUS

NATIONAL OILWELL VARCO, L.P. AND
NEW HAMPSHIRE INSURANCE COMPANY



**\*\*\*\*\*\*\*\*\*\***


SUPERVISORY WRIT FROM A RULING
OF THE OFFICE OF WORKERS' COMPENSATION,
DISTRICT 04, LAFAYETTE PARISH,
STATE OF LOUISIANA, DOCKET NO. 17-01205
HONORABLE ADAM JOHNSON, PRESIDING JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JOHN E. CONERY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Shannon J. Gremillion, and John E. Conery,
Judges.



**WRIT DENIED.**

**Gerald A. Melchiode**
**Kevin A. Marks**
**Renée S. Melchiode**
**Benjamin M. Pri-tal**
**Melchiode Marks King, L.L.C.**
**639 Loyola Avenue, Suite 2550**
**New Orleans, Louisiana  70113**
**(504) 336-2880**
**COUNSEL FOR DEFENDANTS/ APPLICANTS/RELATORS**
**NATIONAL OILWELL VARCO, L.P. AND**
**NEW HAMPSHIRE INSURANCE COMPANY**

**Thomas A. Filo**
**Somer G. Brown**
**Cox, Cox, Filo, Camel & Wilson, L.L.C.**
**723 Broad Street**
**Lake Charles, Louisiana  70601**
**(337) 436-6611**
**COUNSEL FOR PLAINTIFF/RESPONDENT:**
**Park Place SurgeryCenter, LLC, D/B/A**
**Park Place Surgical Hospital**

**CONERY, Judge.**

The defendants-relators, National Oilwell Varco, L.P., and New Hampshire Insurance Company, seek supervisory writs from the judgment of the Office of Workers' Compensation, District 04, the Honorable Adam Johnson presiding, which denied the relators' exceptions of res judicata, lis pendens, lack of subject matter jurisdiction, and nonjoinder of indispensable party. For the following reasons, the motion to seal the record is granted, except as to this opinion, and the writ is denied at relators' cost.

## STATEMENT OF THE CASE

The instant case arises from a workers' compensation form 1008 claim filed by the plaintiff-respondent, Park Place Surgery Center, LLC d/b/a Park Place Surgical Hospital (Park Place), for underpayment of a workers' compensation medical bill by the relators (the employer and employer's insurer) pursuant to La.R.S. 23:1034.2(F) in connection with medical treatment provided for on-the job injuries sustained by employee Brian Armstead. Park Place also seeks statutory penalties and attorney fees under La. R.S. 23:1201(F)(4) for the arbitrary and capricious handling of the workers' compensation claim by relators.

The relators filed exceptions of prematurity, vagueness, res judicata, lis pendens, lack of subject matter jurisdiction, and nonjoinder of indispensable party, all of which were denied following a hearing on April 25, 2017. A written judgment was signed on May 1, 2017. The relators are now before this court on writs seeking review of the trial court's rulings on the exceptions. The relators also filed a motion to seal the record, briefs, exhibits, and any issued opinion or other pleading if confidential and proprietary information is included.

## SUPERVISORY RELIEF

The requirement of irreparable injury is met in this case in light of *Herlitz Construction Company, Inc. v. Hotel Investors of New Iberia, Inc.*, 396 So.2d 878 (La.1981). When the overruling of an exception is arguably incorrect, when a reversal will terminate the litigation, and when there is no dispute of fact to be resolved, judicial efficiency and fundamental fairness to the litigants dictate that the merits of the application for supervisory writs should be decided in an attempt to avoid the waste of time and expense of a possibly useless future trial on the merits.

## ON THE MERITS

The relators argue that the medical bill that forms the basis of the dispute was initially reviewed by FairPay Solutions, Inc. (FairPay). FairPay provides review services of workers' compensation bills to employers and their respective insurers. The relators add that the payment made to the plaintiffs was in keeping with FairPay's recommendation and in accordance with a Settlement Agreement confected several years ago in a class action suit, *Opelousas General Hospital Authority, a Public Trust d/b/a Opelousas General Health System and ArkLaMiss Surgery Center, LLC v. FairPay Solutions, Inc.*, No. 12-C-1599-C, 27th Judicial District Court, St. Landry Parish (Class Action), and signed by the trial court on August 17, 2012.[1]

The Class therein was defined as follows:

All Louisiana hospitals and ambulatory surgical centers that have provided outpatient services to workers' compensation patients pursuant to the Louisiana Workers' Compensation Act, LSA-R.S. 23:1021[,] et seq., and whose bills have been discounted, adjusted,

---

[1] Part of the record was sealed in *Opelousas General Hosp. Authority v. FairPay Solutions, Inc.*, docket number 17-42, which is at issue herein, but not this court's opinion issued in that matter, cited infra.

paid on a reduced basis, or otherwise paid at less than the billed amount after October 21, 2003[,] as a result of a reduction recommended by FairPay.

Pursuant to the Settlement Agreement, FairPay paid about seven million dollars to the members of the class for the dismissal of their claims. A permanent injunction was entered against any future claims involving FairPay's recommendation for payment on a medical bill made pursuant to the Future FairPay Pricing Methodology (FPPM). The Settlement Agreement also contained a mechanism for dispute resolution for a Class Member to seek additional reimbursement from a released party under the agreement. Additionally, the Class Members agreed to a safe haven for FairPay wherein they agreed to waive and release all claims and liability pertaining to bills paid pursuant to FairPay's recommendation in keeping with the FPPM. Once a Class Member exhausts the delineated procedure for dispute resolution and FairPay and its clients have allegedly failed to follow the Methodology, the Class Member may file an action in district court or in the Office of Workers' Compensation (OWC). The issue of whether FairPay adhered to the Methodology was the sole issue in the prior litigation.

After the Settlement Agreement was approved, Qmedtrix, a competing bill review company, appealed on numerous grounds, including the assertion that the class action claims arose under the exclusive jurisdiction of the OWC. A panel of this court affirmed the district court's approval of the settlement and the adoption of a new methodology for pricing. *Opelousas General Hosp. Authority v. FairPay Solutions, Inc.*, 13-17 (La.App. 3 Cir. 7/13/13), 118 So.3d 1269. Further, that panel concluded that the class action claims did not arise under the Workers'

Compensation Act (WCA); thus, the claims did not fall within the exclusive jurisdiction of the OWC.

The Settlement Agreement provides for a Reconsideration Period which requires the Class Member to submit to FairPay for review and reconsideration the amount recommended to be paid and the amount actually paid on a bill or bills. FairPay then reviews the bill or bills to determine if it erred in the application of the pre-approved Methodology. FairPay then has thirty days to seek a mediation of future disputes. Only after these procedural remedies have been exhausted may a healthcare provider bring an action alleging FairPay has not properly applied the Methodology under the Settlement Agreement.

Park Place maintains, however, that it complied with the Initial Reconsideration Period and submitted the subject claim to FairPay before the thirty-day period required prior to filing the workers' compensation form 1008 claim. Further, Park Place asserts that the relators, who had the burden of proving their exception of prematurity, offered no evidence to show that Park Place failed to comply with the Initial Reconsideration Period.

Park Place adds that its 1008 claim was filed pursuant to La.R.S. 23:1034.2(F) for underpayment of a workers' compensation medical bill in connection with treatment provided to Mr. Armstead. The 1008 form, Park Pace asserts, indicates that the claim is limited to "non payment [sic] of medical services" and statutory penalties/attorney's fees for arbitrary and capricious handling of the claim. As such, Park Place argues that this claim arises under the WCA. Park Place adds that the claim is made against the employer and insurer only, and does not mention the Settlement Agreement or refer to FairPay discounts. Further, Park Place claims that the relators wrongly assert that the "zero

payments" notation on the bill at issue was in keeping with the FPPM in the Class Settlement.

**Res Judicata**

The relators argue that the claim in the instant matter is barred by the doctrine of res judicata as provided in La. R.S. 13:4231:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
>
> (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
>
> (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

The relators urge that each element of La. R.S. 13:4231 is met from the prior class action lawsuit and settlement:

1) a valid settlement was confected;

2) the settlement is final;

3) the instant matter involves the same parties;

4) the causes of action are identical;

5) the settlement was designed to apply to future transactions; and,

6) the causes of action herein involve the same transaction or occurrence previously settled and subject to a permanent injunction.

The relators maintain that Park Place was a Class Member in the prior litigation. Further, the relators point out that they are "released parties" under the

settlement and paid the invoice for medical treatment provided to Mr. Armstead pursuant to FairPay's recommendation using the FPPM.

In opposition, Park Place argues that the settlement to which the relators refer actually authorizes the claim herein. Section 11.7 of the Settlement agreement reads:

> Each Class Member agrees that, should a dispute arise concerning the proper application of the Future FairPay Pricing Methodology, the Class Member must first submit the dispute directly to FairPay for reconsideration of the recommended reduction. FairPay will have 30 days (the "Initial Reconsideration Period") from presentation to resolve the dispute and/or make any corrections to the recommended reduction and the Class Member is prohibited from taking any further action during the Initial Reconsideration Period. If at the end of the Initial Reconsideration Period, a dispute over the Future FairPay Pricing Methodology still exists, the Class Member agrees to submit to non-binding mediation if, but only if, requested by FairPay. Any such mediation shall be conducted within 30 days of the end of the Initial Reconsideration Period at a cost to be born [sic] equally by FairPay and the Class Member. At the expiration of the 30 day Initial Reconsideration Period (or after mediation if required by FairPay) the dispute has still not been resolved, then, and only then, will the Class Member have the option of pursuing a claim for underpayment in the Louisiana Office of Workers' Compensation. If the Class Member does pursue a claim in the Louisiana Office of Workers' Compensation or proceeding in any other venue on the basis that the payment was not consistent with the Future FairPay Pricing Methodology, then the prevailing party shall be entitled to an award of costs and reasonable attorneys' fees.

Since the Settlement Agreement authorizes the instant claim and it was never settled in the FairPay Class Settlement, Park Place concludes that the FairPay Class Settlement is not res judicata[2].

Additionally, Park Place contends that the relators' exception of res judicata attempts to ignore, circumvent, or disregard the final judgment approved and incorporated in the Settlement Agreement which expressly authorizes the filing of workers' compensations claims. As such, Park Place urges that the exception

---

[2] The bill was paid on February 26, 2014, almost two years after the effective date of the settlement, May 28, 2012.

constitutes an impermissible collateral attack of that judgment, which is forbidden

by Louisiana law:

> A collateral attack is defined as an attempt to impeach the decree in a proceeding not instituted for the express purpose of annulling it. *Regions Bank v. Cabinet Works, LLC*, 11-748 (La.App. 5 Cir. 4/10/12); 92 So.3d 945, 961. "No principle of law has received greater and more frequent sanction, or is more deeply imbedded in our jurisprudence, than that which forbids a collateral attack on a judgment or order of a competent tribunal, not void on its face." *Salles v. Salles*, 04-1449 (La.App. 1 Cir. 12/2/05); 928 So.2d 1, 5, quoting *Allen v. Commercial Nat'l Bank*, 243 La. 840, 147 So.2d 865, 868 (La.1962). "A judgment rendered by a Court of competent jurisdiction imparts absolute verity and has the force of things adjudged, unless and until it is set aside in a direct action of nullity. It cannot be collaterally attacked." *Salles, supra* at 5-6 (internal citations omitted).

*Allstate Ins. Co. v. Daniel*, 15-90, p. 7-8 (La.App. 5 Cir. 10/28/15), 177 So.3d 169, 173.

The Disputed Claim for Compensation form 1008 was filed by Park Place against the relators for "Nonpayment of medical services,[3] penalties, and attorney fees for arbitrary and capricious handling of this claim." Park Place also indicated that it is not a PPO related claim. The EOB reflects that six of the eight charges were not paid, but were reduced to zero following bill review and PPO reductions. A total of $11,267.23 was charged with bill review reductions of $387.53 and a PPO discount of $5,136.01, leaving a recommended allowance of $5,004.50. Gallagher Basset – Baton Rouge is listed as the bill reviewer.

At the hearing, the OWC did not give verbal reasons for ruling, nor did it provide reasons in its written judgment or issue separate written reasons for ruling. Considering the arguments of the parties and the Settlement Agreement discussed herein, the relators have not shown that res judicata applies to the instant matter. Park Place does not allege in its 1008 claim that it disputes the application of the

---

[3] The bill is more fully described in the Explanation of Benefits (EOB) attached to the 1008 claim form.

7

FPPM. Further, the claim is directed at the employer and employer's insurer for nonpayment of portions of the bill. Accordingly, we find that the WCJ did not err in denying the relators' exception of res judicata.

**Lack of Subject Matter Jurisdiction**

The relators argue that this court has already determined that the OWC does not have jurisdiction over the FairPay Settlement Agreement; thus, the issue of subject matter jurisdiction is law of the case.

> The present matter simply does not arise under the Act as the Act does not regulate contracts between bill reviewers and medical care providers. "Mere involvement of workers' compensation issues is insufficient; such disputes may 'relate to' [] workers' compensation matters, but they do not 'arise out of' the Act." *Broussard Physical Therapy v. Family Dollar Stores, Inc.*, 08-1013, p. 9 (La.12/2/08), 5 So.3d 812, 817. The contract claims resolved in this class action settlement involve a civil dispute between companies that provide bill review services to medical care providers. The district court properly had jurisdiction over this matter.

*Opelousas General Hospital Authority v. FairPay Solutions*, 13-17, p. 6 (La.App. 3 Cir. 7/13/13), 118 So.3d 1269, 1274. The relators also maintain that the mere involvement of a workers' compensation statute or claim does not automatically subject the matter to the OWC's jurisdiction. *Broussard Physical Therapy v. Family Dollar Stores, Inc.*, 08-1013 (La. 12/2/08), 5 So.3d 812.[4]

The relators disagree with the OWC court's reliance on *Musculoskeletal Institute of Louisiana, APMC v. McDonald's Corp.*, 45,628, 45,629 (La.App. 2 Cir. 9/22/10), 48 So.3d 359, which was abrogated by *Agilus Health v. Accor Lodging North America*, 10-800 (La. 11/30/10), 52 So.3d 68. The relators also complain that the authority cited by Park Place predates the *Agilus Health* decision wherein

---

[4] The supreme court held that the workers' compensation judge lacked subject matter jurisdiction to decide a third party demand for defense and indemnification filed by an employer and a workers' compensation insurer against a preferred provider organization. The court found that the third party demand was not a claim or dispute arising out of the Workers' Compensation Act, but was merely related to the Act.

the supreme court clarified that a preferred provider organization's (PPO) discounted reimbursement payment to a health care provider in an amount below that set forth by the reimbursement schedule in WCA was not a violation of the Act.

The relators also refer this court to *Gunderson v. F.A. Richard & Associates, Inc.*, 07-331, 07-400, 07-264 (La.App. 3 Cir. 2/27/08), 977 So.2d 1128, *writs denied*, 08-1063, 08-1072 (La. 9/19/08), 992 So.2d 953, wherein this court found that claims against the PPO provider arose out of the PPO contract, not the Workers' Compensation Act; thus, the claims were not within the exclusive jurisdiction of the OWC (abrogating *Southwest Louisiana Hospital Association v. Superior Carriers, Inc.*, 06-807 (La.App. 3 Cir. 11/2/06), 942 So.2d 754).

Since Park Place's dispute arises from a contractual dispute regarding the relators' application of the FPPM, the relators aver that the matter is not subject to OWC jurisdiction. The relators contend that whether the invoices were properly adjusted is a question of contract interpretation subject to the exclusive jurisdiction of a district court. According to the relators, Park Place sent them an invoice for medical treatment, and the explanation of benefits (EOB) reflects that an adjustment was made pursuant to the contract. As such, the relators conclude that the application of the contract is not a defense and constitutes the entirety of the dispute.

The relators add that the OWC relied upon La.R.S. 23:1034.2(F)(1) to support its subject matter jurisdiction over the instant claims:

> Should a dispute arise between a health care provider and the employee, employer, or workers' compensation insurer, either party may submit the dispute to the office in the same manner and subject to the same procedures as established for dispute resolution of claims for workers' compensation benefits.

This provision, the relators argue, refers to disputes arising under the Workers' Compensation Act. The Settlement Agreement, however, is a contract between FairPay, its clients, and the healthcare providers and set forth the methodology for adjustment of medical bills. The relators urge that Park Place alleges that payments were not made pursuant to the methodology, and thus FairPay has breached the contract.

In opposition, Park Place argues that the relators ignore this court's en banc decision in *Beutler England Chiropractic Clinic v. Mermentau Rice, Inc.*, 05-942 (La.App. 3 Cir. 5/31/06), 931 So.2d 553, and the supreme court's decision in *Broussard Physical Therapy v. Family Dollar Stores, Inc.*, 08-1013 (La. 12/2/08), 5 So.3d 812. The courts therein held that the OWC had jurisdiction to consider a healthcare provider's claim for unpaid amounts following the discount of the provider's bills by a third-party administrator. Park Place asserts the claims were brought under La.R.S. 23:1034.2(F)(1); thus, the respective claims arose from the Workers' Compensation Act and were within the OWC's jurisdiction.

Park Place maintains that a simple review of the 1008 claim shows that it is not seeking to enforce any settlement nor does it request such relief. Although Park Place may qualify as a released party under the FairPay Class Settlement, Park Place contends that it is not trying to enforce any settlement in the workers' compensation claim. Park Place adds that the relators have the right to raise the FairPay Class Settlement as a defense to pay less than the amount of the fee schedule.

Lastly, Park Place asserts that an employer cannot defeat subject matter jurisdiction in an action properly brought before the OWC through its choice of defenses because the main demand controls subject matter jurisdiction. The main

demand, Park Place urges, simply asserts claims for non-payment of charges submitted in the medical bill; thus, it falls within the subject matter jurisdiction of the OWC and La.R.S. 23:1310.3.

The relators have not shown that this matter involves the FPPM of the Settlement Agreement. In light of this court's decision in *Beutler England Chiropractic Clinic*, 931 So.2d 553, and La.R.S. 23:1034.2(F)(1), we find that the OWC has jurisdiction to consider Park Place's claim for the unpaid amounts due to the discounts applied to the bill. Accordingly, the WCJ did not err in denying the relators' exception of lack of subject matter jurisdiction.

**Lis Pendens**

The relators argue the trial court erred in denying their exception of lis pendens. They urge the identical issues in this matter were pending before this court in *Opelousas General Hosp. Authority v. FairPay Solutions, Inc.*, docket number 17-42. The district court's ruling was recently affirmed on appeal. *Opelousas General Hosp. Authority v. FairPay Solutions, Inc.*, 17-42 (La.App. 3 Cir. 6/13/17), ___ So.3d ___, and writs were filed in the Louisiana Supreme Court on July 13, 2017, docketed as 2017-C-1223 and on July 27, 2017, docketed as 2017-C-1319. As such, that matter is still pending.

Pursuant to La.Code Civ.P. art. 531, "[w]hen two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, between the same parties in the same capacities, the defendant may have all but the first suit dismissed by exception thereto as provided in Article 925 (declinatory exception of lis pendens)."

In opposition, Park Place argues that none of the requirements of lis pendens are met. The parties to the class action are not the same parties as those involved

in the instant workers' compensation claim, and the claims are completely different. On July 15, 2016, the Class filed suit in district court to enforce the Settlement Agreement, alleging therein that FairPay was applying the FPPM inconsistently in the adjustment of claims. The district court evaluated FairPay's payment of bills to determine if it complied with the provision of the Settlement Agreement. The trial court found an error occurring in the performance of the FPPM (Medicare edits), resulting in improper payments, and granted the plaintiffs' motion. As previously stated, writs have been taken to the supreme court in that case.

The relators have not shown that this matter involves the application of the FPPM of the Settlement Agreement; thus, the claims are not the same. Accordingly, we find that the WCJ did not err in denying the relators' exception of lis pendens.

**Nonjoinder**

The relators argue that complete relief cannot be granted to the parties in the absence of FairPay, which paid almost $7,000,000 in return for the release of all claims of the Settlement Class. The relators maintain that the dispute herein concerns obligations between three distinct parties, one of which—FairPay—is not present in the suit. The relators conclude that FairPay is unjustly unrepresented, and FairPay's absence will result in prejudice to the relators in providing a defense. The relators assert that Park Place's claim involves the underpayment of its bill made pursuant to an adjustment by FairPay. As such, any interpretation of the Settlement Agreement requires that FairPay be present. Further, the relators maintain they will incur multiple and inconsistent obligations in FairPay's absence.

In opposition, Park Place notes that the relators conceded in their exception that FairPay could not be joined or named a defendant in this matter, as FairPay is not an employer or workers' compensation insurer and is not responsible for paying the bill. This concession, Park Place maintains, demonstrates why the exceptions of res judicata, lis pendens, and lack of subject matter jurisdiction are without merit. FairPay may have an interest in the instant claim, but Park Place urges that FairPay's absence does not require the drastic remedy of dismissal sought by the relators.

Park Place contends that FairPay does not qualify as an indispensable party under Article 641, which reads, in part: "A person shall be joined as a party in the action when . . . (1) In his absence complete relief cannot be accorded among those already parties." As such, Park Place avers that the only relief sought in the instant claim is for the payment of the workers' compensation bill under La.R.S. 23:1034.2 and for penalties and attorney fees under La.R.S. 23:1201(F). Park Place can only obtain relief from the relators; thus, Park Place concludes that complete relief can be obtained in FairPay's absence.

Next, Park Place refers to the second test for joinder of an indispensable party, the determination of whether a third party has the right to intervene under La.Code Civ.P. art. 1091. Park Place contends that if FairPay believed its rights were not being protected, it could intervene to further protect its interest. Since FairPay has not intervened, the veracity of the relators' claim that FairPay should be deemed indispensable is called into question.

Even if this court should find that FairPay qualifies as an indispensable party, Park Place urges that the exception was, nonetheless, properly denied under La.Code Civ.P. art. 642, which reads:

13

If a person described in Article 641 cannot be made a party, the court shall determine whether the action should proceed among the parties before it, or should be dismissed. The factors to be considered by the court include:

(1) To what extent a judgment rendered in the person's absence might be prejudicial to him or those already present.

(2) The extent to which the prejudice can be lessened or avoided by protective provisions in the judgment, by the shaping of relief, or by other measures.

(3) Whether a judgment rendered in the person's absence will be adequate.

(4) Whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Park Place contends that the relators skip over these factors and jump straight to the dismissal of the matter without contemplating the possibility of proceeding without FairPay.

Park Place maintains that all of the factors support proceeding with the action rather than dismissing it:[5]

Factor one (1) has already been addressed by FairPay providing a defense to the instant workers' compensation claim. By providing a defense, FairPay can control the manner the case is defended, briefed, tried and appealed. Factor two (2) allows FairPay to intervene as an actual party if it believes that providing a defense to Defendants is not adequate. Factor three (3) deals with the adequacy of Claimant's Judgment in the absence of FairPay, and as discussed above, all relief sought can be obtained without FairPay and conversely no relief could possibly be obtained against FairPay in the OWC. Finally, factor four (4) weighs heavily against dismissal because Park Place can obtain no relief in any other forum for a workers' compensation medical bill dispute.

Park Place does not allege that the adjustment of the bill involved the Settlement Agreement or the FFMP. As stated by Park Place, FairPay may have an interest in the instant matter and is not prohibited from intervening. Park Place can only seek relief from the relators, not FairPay, for payment of the bill; thus,

_____

[5] Park Place Brief in Opposition, p. 12.

14

FairPay is not an indispensable party.  Lastly, even if this court were to find that FairPay is an indispensable party, dismissal of the action is not necessary for the reasons discussed under La.Code Civ.P. art.  642.  Accordingly, we find that the WCJ did not err in denying the relators' exception of nonjoinder.

## CONCLUSION

The motion to seal the record is granted, except as to this opinion, and the writ is denied at relators' cost.

**WRIT DENIED.**